[No. 20364. In Bank. — March 28, 1888.]

THE PEOPLE, RESPONDENT, v. CHARLES BENT-
LEY, APPELLANT.

CRIMINAL LAW — CONSPIRACY — CIRCUMSTANTIAL EVIDENCE. — A conspiracy
may be proved by circumstantial evidence.

ID. — EVIDENCE SHOWING CONSPIRACY — RES GESTÆ. — In a prosecution
for an assault to murder, evidence of the acts of an alleged co-conspirator,
done before the commission of the crime, and tending to show the proba-
bility of an understanding between him and the defendant in regard to
its perpetration, are admissible to prove the conspiracy as part of the res
gestæ.

ID. — ASSAULT TO MURDER — CONVICTION OF ASSAULT WITH DEADLY
WEAPON. — A defendant may be convicted of an assault with a deadly
weapon under an information charging him with an assault to commit
murder.

APPEAL from a judgment of the Superior Court of
Tulare County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*W. A. Gray*, and *Oregon Sanders*, for Appellant.

*Attorney-General Johnson*, for Respondent.

SEARLS, C. J.—The defendant was convicted of an
assault with a deadly weapon, upon an information
charging him with an assault to commit murder.

The evidence at the trial tended to show that the
prosecuting witness Moore, and one Baker, were, on the
evening of May 3, 1887, at Tulare, and were desirous of
going to Broder's ranch, which was in the direction of,
but not on the direct road leading from Tulare to, Visalia.
One Ward was speaking of going to Visalia, and Moore
contracted with him to take him (Moore) and Baker to
the ranch in his (Ward's) buggy. On reaching a point
on the road toward Visalia, where the road to the ranch
diverged, Ward made some objections to going to the
ranch, affecting to believe that it was farther than had
been represented, the outcome of which was that the

parties agreed to go to Visalia direct.   On the way, and
after passing the forks of the road, Ward stopped at the
house of a Mrs. Bentley, where, leaving Moore and Baker
in the buggy, he entered and staid some ten minutes.
The defendant and one Ridgeway, arrested with him,
were stopping at this house, which was really not on the
most direct road to Visalia.

All these things occurred in the night.   After leaving
the Bentley house, Ward turned from the Visalia road
and drove off for perhaps 150 yards, changed his course
and affected to be lost, turned back toward the Visalia
road, drove a short distance, when his passengers got out
of the buggy, and telling them to go up to some trees
and he would "drive on to see," and would be back in a
minute.   He did not return, and was not again seen that
night.   Moore and Baker walked to the trees, about 150
yards distant, where they met two men, who commanded
them to hold up their hands, turn their backs, and give
up their money.   The robbers had pistols, and threatened
to shoot if resisted.

Moore succeeded in getting a knife out, resisted the
man who had him more particularly in charge, cut him,
knocked him down, and seems to have been in a fair
way to conquer, when his antagonist called upon his
companion, who came to the rescue, struck Moore with
a pistol over the head, and rendered him senseless.   Two
shots were fired by the would-be robbers,—one by the
assailant of Moore, which struck the latter, and the other
by Baker's assailant.

The assault occurred about two o'clock, A. M.   Moore
recognized Ridgeway, whom he cut, and swore that in
size and general appearance the other man resembled
defendant.

Ridgeway and defendant were arrested the next morn-
ing at the Bentley house, the former wounded by cuts;
their pistols were found each with a shot discharged, and
that of defendant bloody and broken.   The assault was

made within a quarter of a mile of the Bentley house, which latter place seems to be about one mile from Visalia.

Bentley and Ridgeway were seen together at Visalia as late as nine, P. M., on the night of the assault, and were usually seen together. Ward was a frequent visitor at the Bentley house.

The foregoing statement contains so much of the testimony as is essential to an understanding of the legal propositions involved in the case.

It is objected here, as it was at the trial, that the declarations, acts, and knowledge of Ward were not admissible in evidence, for the reason that no proper predicate had been established by showing the existence of a conspiracy between him (defendant) and Ridgeway.

A conspiracy, like most other facts, may be proved by circumstantial evidence. Indeed, it is not often that the direct facts of a common design, which is the essence of a conspiracy, can be proven otherwise than by the establishment of independent facts, bearing more or less remotely upon the main central object, and tending to convince the mind reasonably and logically of the existence of the conspiracy.

In the language of Greenleaf: "If it be proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another another part of the same so as to complete it, with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object." (3 Greenl. Ev., sec. 93; United States v. Doyle, 6 Saw. 612.)

The evidence to which the defendant's counsel objects under this head was almost exclusively directed to the establishment of the fact of a conspiracy by the inferential or circumstantial method, and beyond such result had no tendency to convict the defendant.

The details of the agreement with Ward, and of their

travels toward Visalia, were well enough to an understanding of the surroundings of the main facts, and as showing the minor facts which led up to and illustrated the former, and thus constituted a part of the *res gestæ.* They were not, however, acts which would or could militate against the defendant, except to show the probability of an understanding between him and Ridgeway on the one hand and Ward on the other, that the latter should afford an opportunity, and the former should embrace it by attempting to rob Moore and Baker.

These acts did not prove or attempt to prove the attempted robbery. That was proven by other and direct evidence as to the fact, and identity of Ridgeway, and by circumstances tending to show defendant as one of the perpetrators.

The acts complained of tended to establish the conspiracy, and were therefore admissible.

There was no error in the withdrawing from the jury of the instruction given inadvertently, to the effect that they must find the defendant guilty of an assault with an intent to commit murder, or acquit him.

Under the information, the defendant could be found guilty of an assault to commit murder, an assault with a deadly weapon, or acquitted.

The court had already, and in other parts of his charge, instructed the jury fully as to the necessity of being convinced of the guilt of the defendant beyond a reasonable doubt; had explained to them the meaning of a reasonable doubt; and had covered everything involved in the instruction withdrawn, except as to the various forms of verdict which they were authorized under the information to render.

We need not stop to discuss the propriety of the instruction given by the court below upon the question of an assault to commit murder, for the reason that if conceded to be erroneous (which we do not decide), the defendant, who was convicted of the lesser offense of an

assault with a deadly weapon, could not have been injured thereby.

The judgment and order appealed from are affirmed.

McKINSTRY, J., TEMPLE, J., McFARLAND, J., PATERSON, J., SHARPSTEIN, J., and THORNTON, J., concurred.