[Crim. No. 1077. In Bank.—June 1, 1904.]

## THE PEOPLE, Respondent, v. CHARLES DONNOLLY, Appellant.

CRIMINAL LAW—MURDER—CIRCUMSTANTIAL EVIDENCE.—The circumstantial evidence in this case reviewed and held sufficient to sustain the verdict against the appellant.

ID.—CONSPIRACY—ORDER OF EVIDENCE.—Although, as a general rule, where the ultimate fact to be proved is a conspiracy between the defendant and other persons to commit the crime charged, the conspiracy should be first proved before other evidence is admitted, yet the order of evidence in this respect is not mandatory.

ID.—PROOF OF CONSPIRACY—DIRECT EVIDENCE NOT REQUIRED.—In order to establish the conspiracy it is not necessary to prove directly that the parties met and agreed to undertake the commission of the crime, but it may be shown indirectly by evidence of any facts from which the jury might infer the ultimate fact of conspiracy.

ID. — FLIGHT OF CONSPIRATORS — WEIGHT OF EVIDENCE — LANGUAGE OF COURT.—The language of the court in ruling upon the admissibility of evidence of the flight of the defendant with another conspirator, in speaking of "two persons who were claimed to have run down Twentieth Street," is not subject to the objection that it was upon the weight of the evidence.

ID.—ADMISSION OF CLUB.—It was proper to admit evidence in regard to a club used upon the deceased, and to admit the club itself in evidence, if sufficiently identified.

ID.—DYING DECLARATIONS.—The dying declarations of the deceased were properly admitted when the foundation for their admission was sufficiently laid.

ID. — TESTIMONY BEFORE COMMITTING MAGISTRATE — EMPLOYMENT OF TYPEWRITER BY STENOGRAPHER.—The testimony of a witness before the committing magistrate, the foundation for the admission of which is properly laid, is not inadmissible because the official stenographer whose certificate was attached to the transcript of evidence employed a typewriter to whom his notes were dictated, and whose work he compared with his notes.

ID.—CROSS-EXAMINATION—LIMITS.—The court did not err in refusing to allow a witness to be improperly cross-examined as to matters about which he did not testify in chief.

ID.—PROPER CROSS-EXAMINATION—ANTAGONISM IN RELATION TO STRIKE.—Within the limits of proper cross-examination, it was proper to show that there was an antagonism and opposition between the deceased and the defendant growing out of a strike, in which the deceased refused to participate.

ID.—INSTRUCTIONS—IMPROPER REQUESTS.—Instructions requested by the
defendant which were upon mere abstract questions, having no rela-
tion to the facts of the case, and others which were misleading,
or which were unnecessary as being included in the charge of the
court, were properly refused.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order denying
a new trial. William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

H. W. Hutton, M. J. Kuhl, and J. J. Barrett, for Appellant.

U. S. Webb, Attorney-General, C. N. Post, Assistant Attor-
ney-General, and P. F. Dunne, for Respondent.

VAN DYKE, J.—The appellant, William Buckley, Thomas
Moran, and Edward Duncan were informed against jointly
by the district attorney for the crime of murder. In accord-
ance with appellant's demand, he was tried separately, and
was convicted of murder in the second degree. He moved for
a new trial, which was denied, and was sentenced to seventeen
years' imprisonment in the state prison. He appeals from the
judgment and the order denying a motion for a new trial.

The first point made by the appellant, and the one appar-
ently upon which he most relies, is, that the evidence is insuffi-
cient to support the verdict and judgment. The evidence was
indirect or circumstantial. The facts concerning the homicide
are as follows: On October 11, 1901, George W. Rice, a ma-
chinist employed at the Golden State and Miners' Iron Works,
in San Francisco, was shot and killed just as he had alighted
from a street-car at the corner of Howard and Twentieth
streets and was about to proceed to his home near by, after his
day's work. The evidence showed beyond a doubt that the
death of Rice was not the result of a sudden encounter or
heated quarrel, but was one of preconcert and prearrangement
among several parties. At half-past five o'clock on the after-
noon of the day of the shooting Rice quit work for the day
and took the west-bound Howard-Street car at the corner of
First and Howard streets, and rode on this car, as already
stated, as far as Twentieth Street, where he alighted. He had

no sooner stepped from the car at the corner of Howard and Twentieth streets when another person who got off at the same time ran forward and felled him to the ground with a club, and another person from the car followed and shot the prostrate man three or four times. The man who shot and the man who clubbed, and, according to the testimony of some of the witnesses, a third man, immediately ran down Twentieth Street, turning the corner of Shotwell towards Nineteenth Street, Buckley and Moran being identified as two of the parties who thus ran away. When the defendant was arrested the next morning he admitted to the officers that he had been with Buckley, Moran, and Duncan in Maloney's saloon at the corner of Brannan and Zoe streets, on the afternoon of the killing, and that they all left the saloon together between four and five o'clock, and that he went as far as Third and Brannan, but denied that he had gone out with them on the Howard-Street car. He was then told that Buckley had said that he had gone out with them, but he denied that he had. When taken to the city prison he was confronted with Buckley, whereupon Buckley repeated what he had told the officers, that Donnolly had gone out to Twentieth and Howard streets with them, and thereupon defendant admitted in terms that he had told the officers a lie, and that he did go out on the Howard-Street car with Buckley and Moran, but that when they got out to Howard and Twentieth streets he heard some shots fired, but claimed he did not know who fired the shots. It further appears that defendant was a member of the Pacific Coast Marine Firemen's Union for some time during the year 1901, including the month of September and up to the second day of October, and that during the whole of this time the members of that union were out on a strike. There was at the time a general strike of the City Front Federation. On October 11th there was a strike among the machinists of San Francisco, including the employees of the Golden State and Miners' Iron Works, and such strike had been active from the preceding May. It appears that Rice did not go out on this strike, but that during the pendency of the strike and up to the time of his death he kept on working as a machinist at the Golden State and Miners' Iron Works. It is strongly contended on behalf of the appellant, from all that appears in the evidence, he may have been an innocent passenger on the

Howard-Street car at the time, and have been simply a witness to the killing of Rice without having taken any part therein, the same as other passengers on the car. But it appears from his own admission that he was in company with the proved conspirators, Buckley and Moran, and a third man by the name of Duncan, at a given saloon on the afternoon of the murder, and remained in their company at the saloon until five o'clock or thereabouts; that he left the saloon in their company, and that he rode out on the Howard-Street car with Buckley and Moran to the scene of the shooting; and that they all left the car at the time of the shooting. He certainly was a member of the party or company of men who boarded Rice's car and rode on that car to Twentieth and Howard streets, where Rice was assassinated. Buckley and Moran, as the evidence proved, went to Howard and Twentieth streets for the purpose of murdering Rice, and Donnolly was in their company and went with them, and he belonged to a union that had been on strike, whereas Rice, on the contrary, refused to go out on strike and continued at work. If the defendant in this case had been simply a passenger on the car, innocent of any intended crime, he certainly would have had no reason for denying that he had gone out as he did; but when confronted by Buckley and Moran, the proved conspirators, he was driven to the necessity of admitting the truth of the statement of Buckley that he had accompanied them out there. From these circumstances the jury had a right to infer that it was the sense of his own guilt that compelled him to deny that he went out with the other parties, and that he was one of the party that committed the crime.

The ponderous transcript of the testimony and proceedings in this case contains innumerable objections on the part of defendant's counsel to testimony in reference to certain facts from which a conspiracy might be inferred, on the ground that the ultimate fact of conspiracy should first be established.

In appellant's brief his counsel say: "During the admission of the testimony for the prosecution, defendant in the case of each witness made a motion to strike out the whole thereof, on the ground that no connection had been shown between the testimony of the witness and the defendant, and in each case an adverse ruling was made by the court and exception taken." There are over six hundred objections to rul-

ings and exceptions thereto involved in the numerous motions to strike out, scattered through the transcript, which is composed of over six hundred pages, and it would accomplish no good purpose to notice them in detail. They are all on the line as above stated—that no testimony at all could be introduced until the conspiracy had been first established. The general rule is undoubtedly as claimed by appellant, and, when practicable, should be followed; but, as has been held by this court, the order of evidence in this respect is not mandatory, and, under the circumstances, the course adopted by the court below in this case has been often approved. (*People* v. *Fehrenbach,* 102 Cal. 394; *People* v. *Daniels,* 105 Cal. 262; *People* v. *Van Horn,* 119 Cal. 330; *People* v. *Compton,* 123 Cal. 408.)

The ultimate fact here, of course, was the conspiracy on the part of the defendant with the other parties named in the commission of the crime, but it is not necessary in order to establish that fact to prove that the parties met and actually agreed to jointly undertake such criminal action. From the secrecy with which unlawful undertakings are adopted it would be generally impossible to make such proof by direct testimony. Evidence is indirect as well as direct,—consisting of inferences and presumptions,—and it is code law that upon the trial of a case evidence may be given of any facts from which the facts in issue are presumed or are logically inferable; and the jury, by the exercise of their judgment or reason, warranted by a consideration of the usual propensities or passions of men, may make such deductions or draw such inferences from the facts proven as will establish the ultimate fact or facts in issue. (Code Civ. Proc., secs. 1826, 1831-1832, 1870 (subd. 15), 1957-1960.)

From all the facts and circumstances disclosed in this case on the trial of the defendant, it cannot be said that there was not evidence from which the jury could draw the inference or find the ultimate fact of a conspiracy on the part of the defendant; and, as said in *People* v. *Fitzgerald,* 138 Cal. 40, "Where there is evidence to sustain the verdict a question of law cannot arise, but only in a case where there is in effect an entire lack of evidence." Therefore, the verdict of the jury in this case is conclusive, as the jurisdiction of this court in criminal cases is limited to questions of law alone.

The language of the court in passing on the admissibility of the testimony showing the flight of Buckley and another of the conspirators is not subject to the objection that it charged on the weight of evidence. What the court said was, "two persons who were 'claimed' to have run down Twentieth Street."

The court did not err in admitting testimony regarding the club, or in admitting the club itself in evidence. It was sufficient to identify it to warrant its admission as evidence. It was not error to admit the dying declarations of the deceased, and the testimony of the witness Duke concerning the same. The foundation for the admission of his dying declarations was sufficiently laid. The testimony of Erline Piatt, given before the committing magistrate, was properly admitted, the foundation therefor having first been laid. The objections to the transcription of the stenographer's notes are entirely too hypercritical for practical purposes. The stenographer, instead of actually typewriting a portion of the shorthand notes, dictated the same to a typewriter, which seems to be a customary if not the usual practice, and which expedites the transcription as well for the benefit of one side as the other. Besides, it seems he compared the work of the typewriter with his notes, and personally satisfied himself that the transcription was correct, except in the matter of some trifling mistakes. But a full discussion of this objection will be found in the case of *People* v. *Buckley, ante,* p. 375, to which reference is made.

The court did not err in sustaining the objections to the questions asked on cross-examination of the witness Cleve. There is nothing in the direct examination justifying the cross-examination attempted to be made. Appellant excepts to the cross-examination of the witness Bell upon the question of the strike. It was shown by that witness that the strike of Donnolly's organization was in effect up to the second day of October, a few days before the killing of Rice, and that the machinists' strike was still on when the homicide occurred. On the direct examination appellant brought out in the testimony of Bell that Donnolly in 1900 went north in a ship called the Valencia; that he was a member of the firemen's union; and that when he came back from the north he was reinstated in the union, in which he had been in bad standing

in the early part of the year. Further, on direct examination on behalf of the defendant, it was brought out that there had been no connection or business transaction between the Golden State and Miners' Iron Works, where Rice had been employed, and the union to which Donnolly belonged. Upon cross-examination it became important to show that there had been a general strike on the city front, in which Donnolly's union was involved, and also a machinists' strike, and that while these strikes were on the Golden State and Miners' Iron Works was employing men like Rice, who would not join in the strike, and that Rice himself was a non-striking machinist, and occupying a position and pursuing a policy hostile to the general attitude, and out of line with the general position and policy, with which Donnolly's union had become identified; in other words, that there was an antagonism and opposition prevailing between them.

Some fifty instructions were offered on the part of the defendant. Most of them were refused, and a few modified as given by the court. Many of the instructions were upon mere abstract propositions having no relation to the facts of the case as shown by the evidence, and others were entirely misleading or unnecessary, being covered by the charge given by the court. We have examined them quite carefully; and without considering them here in detail, it is sufficient to say that we can see no error on the part of the court in so refusing or modifying the instructions asked. In the charge of the court the case was fully and fairly presented to the jury,—in fact, so fairly presented, and so favorable to the defendant, that no objection seems to be raised thereto in appellant's brief on the appeal.

The judgment and order appealed from are affirmed.

McFarland, J., Lorigan, J., Shaw, J., and Henshaw, J., concurred.

ANGELLOTTI, J., concurring.—I concur in the judgment, and generally in what is said in the opinion of Mr. Justice Van Dyke. It being clearly shown that the death of Rice was not the result of a sudden encounter, but was one of preconcert and prearrangement, I am of the opinion that the evidence was sufficient to sustain the conclusion of the jury that this

defendant was concerned in the commission of the crime, to the extent at least of aiding and abetting in such commission.

BEATTY, C. J., dissenting.—I dissent.  Among the instructions requested by the defendant and refused by the court there were two that correctly stated the law applicable to the case made by the evidence, and for which nothing equivalent was presented as a substitute in the charge of the court.  They were the following: ''Where persons are unlawfully together, and have a concurrent understanding in the actual perpetration of some crime, if one of the defendants of his sole volition, and not in pursuance of the main purpose, and in no way connected with what was actually contemplated, commits another crime, the other is in no way liable.''  ''One who has advised or encouraged in a misdemeanor is not responsible for a murder committed by his co-conspirator, not in furtherance, but independent, of the common design.''  (Instructions Nos. 25 and 32.)

The verdict of the jury acquits the defendant of participation in the deliberate plot to murder Rice, and must have been founded upon the unsatisfactory state of the evidence tending to connect him with the purposes of Buckley and Moran. There was evidence tending to show that his object in accompanying them to the scene of the murder was merely to witness or perhaps to promote a ''scrap''; in other words, to commit a misdemeanor.  In this state of the case it was highly material to the defense that the instructions above quoted should have been given.

It was also an error, in my opinion, to allow the people after the defendant had closed his case to introduce evidence as to his connection with the strikers.  This evidence was intended to show a motive for the homicide, and for that purpose was a part of the opening case.  Having omitted to make that a part of the case in the opening, the people could not bring it in by way of rebuttal.  It rebutted nothing offered by the defendant, for the utmost effect of the evidence offered by him was to leave the case where the people had left it—that is to say, without any evidence of any particular motive on the part of the defendant for seeking the life of the deceased.

Rehearing denied.