[Crim. No. 239. First Appellate District.—August 19, 1910.]

THE PEOPLE, Respondent, v. J. R. ROLLINS, Appellant.

CRIMINAL LAW—GRAND LARCENY—SWINDLING TRANSACTION.—Where plaintiff was deprived of the sum of $100 as the result of a barefaced swindling scheme inaugurated by the defendant, to secure a subscription to pretended mining interests in Alaska which had no existence, the defendant was properly convicted of grand larceny.

ID.—EVIDENCE—CONSPIRACY—ACTS AND DECLARATIONS OF CO-CONSPIRA-
TORS.—Evidence was admissible to show that defendant conspired
with others in furtherance of the swindling scheme, and to show
material acts and declarations of the co-conspirators, during the
life of the conspiracy, and in relation to it.

ID.—LETTERS FROM LAND DEPARTMENTS STATING ABSENCE OF DEFEND-
ANT'S OWNERSHIP—EXHIBITION TO DEFENDANT—IMPLIED ACQUIES-
CENCE.—Letters procured by the police from the land office depart-
ments of Canada and of the United States, stating that defendant
owned no mines in Alaska, which were read to the defendant, were
admissible, not as independent proof of the truth of their contents,
but to show an admission against interest by defendant by his
implied acquiescence in the truth of the statements contained
therein.

ID.—RIGHT OF DEFENDANT TO INSTRUCTION.—The defendant had the
right to an instruction, if he had requested it, to the effect that
the letters were not admitted as substantive evidence of the truth
of the facts stated in them, but to show the attitude of the de-
fendant when they were read to him.

ID.—SUFFICIENCY OF EVIDENCE—PROPER REFUSAL OF REQUESTED IN-
STRUCTION.—*Held*, that the evidence was abundantly sufficient to
go to the jury, and that the court properly refused a requested
instruction that the evidence was insufficient to prove the offense
charged.

ID.—ORDER OF PROOF—CONVERSATION WITH ACCOMPLICES BEFORE PROOF
OF CONSPIRACY.—The rule that declarations of a conspirator can-
not be given in evidence before proof of the conspiracy goes to
the order of proof, which is in the discretion of the court, and
the evidence being sufficient to show the conspiracy, the departure
from the order of proof is matter of no moment, no injury being
shown to have resulted therefrom.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order denying a new trial.
Frank R. Willis, Judge.

The facts are stated in the opinion of the court.

Frank J. Gordon, and J. J. Von Hovenberg, for Appellant.

U. S. Webb, Attorney General, for Respondent.

KERRIGAN, J.—The defendant was found guilty of the
crime of grand larceny as charged. He moved for a new
trial, and this motion being denied, he was sentenced to im-

prisonment in the state prison for the term of ten years. This appeal is from the judgment.

Briefly the facts of the case are as follows: Three men, Williams, Ameral and Wilson, with the defendant Rollins, doing business under the name of "The Hypatia Mining and Development Company," entered into an arrangement for cheating and defrauding a certain class of laborers. Pursuant to this arrangement they caused an advertisement to appear in a newspaper, in answer to which nineteen or twenty men called at the office of the defendant and were there collectively told by Williams that the Hypatia Mining and Development Company was organizing a party of twenty-five to go to Alaska to work on mining claims owned by defendant Rollins and to locate mining claims on property which had been prospected by said Rollins; that said defendant had tried on other occasions to get men to go there and do this mining work, but that after arriving there other companies by offering better pay had enticed them away; that consequently on this occasion, to avert a similar experience, each man desiring to avail himself of the Rollins proposition, would be required to deposit with the defendant and his associates the sum of $200 as a guaranty that the contract would be performed upon his part; that of this sum $40 or $50 could be paid down, and the balance paid in installments. The deposit was to be returned at the completion of the contract, which covered a period of three years. For every dollar deposited they were each to be given one share of stock on the company's books, which, while not entitling them to the possession of the stock, still gave them the right to any dividends paid upon it. In addition each man was to receive his board and lodging while in Alaska and wages at the rate of $4.50 per day or $6.50 per day, according to the kind of work engaged upon. Williams was to visit Alaska at once and ascertain if the facts were as represented by Rollins. If he found that they were the expenses of his trip were to be paid out of the money deposited by the men. If the outlook was not satisfactory Williams was to pay his own expenses.

Rollins was present at this meeting and he advised MacLeod, the complaining witness, to accept the proposition. Accordingly the next day MacLeod paid Williams $50 on

account of the deposit above mentioned, and shortly there-
after, upon making further inquiries in connection with his
employment, was informed by Rollins that Williams had
collected all the money that he could, and instead of going
to Alaska had gone to Los Angeles and had there squandered
it. Rollins promised MacLeod, however, that he would re-
imburse him the amount of money advanced to Williams, and
to that end referred him to Wilson. Wilson told him that
the company would make good the loss, but that in order
to do so a new contract similar to the first one must be made
with the company, including the deposit of the $200 guaranty;
that in the present case, however, a credit of $50 would be
allowed on account of the payment made to Williams, but
that $50 more must be paid at once. This payment was made.

The truth of the matter was that Rollins had no mining
interests in Alaska or elsewhere, the Hypatia Mining and
Development Company was a fiction, and the whole scheme
was a bare-faced swindle.

Defendant's brief is only a little better than would be a
statement that he relies upon each objection made during the
trial and found in the transcript. For example, on one page
of his brief he makes nine points with reference to rulings
on evidence, and none of these is sustained by argument or
citation of authority. Notwithstanding this often-condemned
method of briefing a case (*People* v. *Chutnacutt,* 141 Cal.
685, [75 Pac. 340] ; *People* v. *McLean,* 135 Cal. 309, [67 Pac.
770] ; *People* v. *Cebulla,* 137 Cal. 318, [70 Pac. 181] ; *People*
v. *Bordet,* 13 Cal. App. 429, [110 Pac. 155]), we have exam-
ined each of the points made, and we are giving them all the
consideration they deserve when we say that they were made
as to evidence tending to prove a conspiracy, or to material
acts and declarations of co-conspirators during the life of the
conspiracy and in relation to it, and the evidence was clearly
admissible.

Defendant also claims that the court committed error in
permitting three certain letters to be read during the exam-
ination of the witness Petersen. These letters were from the
land office departments of Canada and the United States in
reply to inquiries made by the police department of Oakland,
and stated in effect that Rollins owned no mining properties
in the places in Alaska claimed by him. They were read to

the defendant by the witness Petersen in a conversation between them upon the defendant insisting that he owned the said mining properties, and after so reading them Petersen repeatedly asked the defendant if he still maintained that he owned such properties. His answers were all evasive, and he finally said that he was unable to state whether he owned any mining claims there or not. These letters were competent evidence—not to establish the truth of their contents, but to prove an admission against interest on defendant's part by showing his conduct with reference to them when they were read to him. His action under the circumstances of this case amounted to an implied acquiescence in the truth of the statements contained in the letters, and certainly for this purpose they were admissible. (*People* v. *McCrea*, 32 Cal. 98; *People* v. *Collins*, 48 Cal. 277; *People* v. *Estrado*, 49 Cal. 171; *People* v. *Palmer*, 53 Cal. 613; *People* v. *Amaya*, 134 Cal. 532, [66 Pac. 794].) It may not be amiss to observe here that the defendant would have been entitled to an instruction to the jury, if he had asked for it, to the effect that these letters were not admitted as substantive evidence of the truth of the facts stated in them, but to show the attitude of the defendant with reference to them when they were read to him. (See cases last cited.) He did not ask for such an instruction.

Defendant requested the court to instruct the jury to acquit him upon the ground that the evidence was insufficient to prove the charge. The evidence was abundantly sufficient to go to the jury, and the proposed instruction was properly refused.

Defendant also complains that the court committed error in permitting MacLeod over objection to testify as to the conversations with accomplices of the defendant before proof of the conspiracy. It is true that the declaration of a conspirator cannot be given in evidence against his fellow conspirators without first proving the conspiracy. But the rule goes to the order of proof, and unless injury is shown—which is not the case here—a departure from the rule is a matter of no moment. (*People* v. *Jones*, 31 Cal. 567; *People* v. *Jones*, 123 Cal. 65, [55 Pac. 698]; *People* v. *Bianchino*, 5 Cal. App. 633, [91 Pac. 112]; *People* v. *Donnolly*, 143 Cal. 398, [77 Pac. 177].) In the case at bar the evidence was sufficient to

justify the jury in the implied finding to the effect that there was a conspiracy.

The judgment is affirmed.

Cooper, P. J., and Hall, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 16, 1910, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 13, 1910.