THE PEOPLE *v.* BELTRÁN ET AL.

APPEAL from the District Court of Ponce.

No. 440.—Decided December 3, 1912.

CRIMINAL LAW—CONSPIRACY—CIRCUMSTANTIAL EVIDENCE.—Considering the secret character of conspiracies, it is necessary as a general rule to prove them by means of circumstantial evidence.

ID.—CONSPIRACY—EVIDENCE—DISCRETION OF COURT—CONFESSION OF ONE OF CONSPIRATORS.—In the exercise of the discretional power which it has to regulate the order of the introduction of evidence, a court may allow a *fiscal* to introduce as evidence the confession of one of the conspirators made in testifying as a witness at the investigation of the crime by the *fiscal,* especially when it has not been shown that said confession was not made freely and spontaneously by the conspirator and even though at that stage of the trial the existence of the conspiracy had not been proven.

ID.—EVIDENCE OF CONSPIRACY—TESTIMONY OF CONSPIRATORS—DISCRETION OF COURT—APPEAL.—Although the general rule is that no testimony of the conspirators shall be admitted until the conspiracy shall have been established, the court has discretional power to vary the order of evidence on this point and its ruling in this regard will not be reversed provided the circumstances of the case warrant such action.

ID.—INFORMATION—INVESTIGATION BY FISCAL—TESTIMONY OF WITNESSES.—The law in force in Porto Rico does not require a *fiscal* to take down in writing the testimony of witnesses called to testify before him in the investigation of a crime. Neither does the law require that an information filed by a *fiscal* shall be accompanied by the written testimony of the witnesses.

ID.—INFORMATION—PRELIMINARY INVESTIGATION IN MUNICIPAL COURT—JURISDICTION.—When a case originates through the sworn information of the *fiscal* the law in force in Porto Rico does not require that a preliminary investigation be made in a municipal court in order that the district court may take jurisdiction thereof.

ID.—EVIDENCE—SUBPOENA DUCES TECUM—PRELIMINARY INVESTIGATION IN MUNICIPAL COURT—TESTIMONY OF WITNESSES.—In the case at bar it was held that the trial court committed no error in refusing to require the *fiscal* to introduce the testimony given by the witnesses in the preliminary investigation made in a municipal court, for, supposing them to be admissible, the defendants could have obtained such testimony by means of a subpoena *duces tecum.*

The facts are stated in the opinion.

*Mr. Nemesio R. Canales* for appellants.

*Mr. Charles E. Foote, fiscal,* for The People.

MR. JUSTICE WOLF delivered the opinion of the court.

This is an appeal from the District Court of Ponce where the cause was initiated by an information filed by the *fiscal* against Miguel and Desiderio Beltrán. The information set up substantially that on January 7, 1912, the defendants voluntarily, maliciously, and illegally conspired to commit the crime of fraudulent destruction of insured property, consisting in burning a house, the property of the defendant, Miguel Beltrán, situated in Ruiz-Belvis Street in said city, which deed they attempted to put into execution on the nights of January 7 and 8, 1912, the house being insured against fire in the Norwich Union Insurance Company for $400, it being the intention of the said defendants to defraud said company; that to this end both defendants introduced gasoline into the said house on January 7, 1912, placing it there in different vessels, near to which they placed straw, bags, and other articles easy to burn, closing hermetically the doors of such house; that these preparative acts being concluded, both defendants abandoned the house, and on the morning of the following day, namely, January 8, 1912, the defendant, Desiderio Beltrán, in a clandestine manner, and always in accord with the other defendant, Miguel Beltrán, entered the house of the latter with the intention of setting it on fire, at which moment he was surprised by the police.

The first and alleged principal ground of error is that the court erred in not granting the motion of the defendants made at the close of the Government's proof to dismiss the case. The defense set up that the *corpus delicti* had not been proved—namely, the conspiracy itself—and alleged that this essential part of the proof could not be supplied by acts or admissions emanating from the mouth of Miguel Beltrán, and that this element of proof being omitted there only remained the acts done by Desiderio Beltrán, from which not even remotely could the conclusion be reached that a conspiracy or agreement existed, which constitutes the *corpus delicti* in the present case; that even with the supposition

that to the words of Miguel Beltrán, made to the *fiscal,* full force should be given as a confession, still that confession, the *corpus delicti* not being previously established, could not affect the other defendant, and, consequently, as it could not be proved by such confession that Desiderio Beltrán conspired to bring about any given act, such confession would have no value as against Miguel Beltrán, inasmuch as in every crime of conspiracy there must exist two or more guilty persons.

Independently of the admissions of Miguel Beltrán, there was evidence tending to show that Miguel Beltrán was the owner of a house situated in Ruiz-Belvis Street in Ponce, which he insured against fire in the sum of $400 in the Norwich Union Fire Insurance Company, and that such house was only worth $250; that the house had been occupied by Miguel Beltrán, but that shortly before the alleged attempt to set it on fire he removed from it, taking his family to the country; that Miguel Beltrán and Desiderio Beltrán are brothers; that on January 7, 1912, at about 4 in the afternoon, the defendant, Desiderio Beltrán, was in the house accompanied by a son, the latter carrying a sack under his arm; that Desiderio Beltrán took off his coat, took a turn or two in the yard and placed the coat in the gallery; that Miguel Beltrán arrived also and attached a bolt on the outside part of the door leading to the yard, and afterwards entered the dining room, on January 7. In other words, on that particular day these three people were seen about this unoccupied house. That on the night of said 7th of January at about 11.30, several persons passing in front of the house caught a disagreeable odor of gasoline, which attracted their attention to such an extent as to cause them to notify the police; that the police came and entered the house, and as they opened the bolted door the odor became stronger, and that on lighting up with a candle they saw inside a great heap of straw, the line of which ran up to the centre of the room and dovetailed with a wooden vessel covered with bags

or rags, and an empty box; that the wooden vessel was full of gasoline; that the pile of straw continued into another room, where there was another pail containing gasoline and that also covered with bags or other inflammable material, and there were other vessels containing gasoline; that the principal door of the main room was covered with a curtain of bags on the inside and the holes stopped up with rags and papers, and that all the cracks and hollows were also stuffed with paper and rags; that about 5.30 of the morning of the 8th, Desiderio Beltrán leaped over a fence, went under the house, went up to the big door and pushed back the bolt, went up on the balcony, where he took off his coat and laid it on the rail, put a package inside of a barrel that was there, and when he was going to open the door to enter the house he was arrested by the police, who had stationed themselves there on the lookout; that the package which he placed inside of the barrel contained four pieces of candle and a box of matches.

While this recital of the evidence is not the strongest possible proof of a common design between the two brothers, yet it is strong circumstancial evidence tending to show that Miguel and Desiderio Beltrán conspired to set the house on fire.

The motion to dismiss proceeded on the basis that the court had no right to take into consideration the admissions of Miguel Beltrán, hence there was no explanation of the presence of the inflammable material in the house, the desertion of the house by Miguel Beltrán, the presence of the two brothers in the afternoon, and the early morning visit of Desiderio with the wherewithal to spread a fire. The whole chain of events was evidence tending to prove no other reasonable conclusion than that there was a design to set the house on fire, and that the two brothers jointly contrived the scheme to get the insurance money on an overinsured house.

It is evident from the authorities that, given the secret

nature of conspiracies, they must frequently, if not generally, be proved by circumstantial evidence.

*People* v. *Donnolly,* 143 Cal., 398; *U. S.* v. *Sacia,* 2 Fed., 754–757; *U. S.* v. *Johnson,* 26 Fed., 684; *People* v. *Bentley,* 75 Cal., 409; *State* v. *Bingham,* 42 W. Va., 234; 24 S. E., 883.

However, even if the two defendants had not been seen together at a time so closely preceding the clandestine entrance of Desiderio Beltrán, and the *corpus delicti,* revealing a common design, had not been proved, we think the court was still entitled to consider the evidence of the *fiscal* with respect to the admission or confession of Miguel Beltrán. This is not a case where it is sought to fasten on a defendant connection with a nefarious design by the statement of an accomplice describing the acts and doings of the said defendant. Desiderio Beltrán, from the evidence before the court, was already shown to have had a design to set fire to the house of his brother. Sufficient proof existed demonstrating that Desiderio Beltrán, either by himself or possibly with others, had laid a train to set the house on fire. The evidence up to that point was of such a nature as to be entirely consistent with the cooperation of other persons besides Desiderio Beltrán. What was the admission or confession of Miguel Beltrán? In effect, that he had removed his family to the country because of the death of two of his children, and that he placed the gasoline and other material in the house in order to disinfect it. This admission, in itself, in no way tended to implicate his brother. If anything, it would have cleared the latter of the graver charge of attempted arson, or of having attempted to defraud an insurer, the felony described in section 478 of the Penal Code. It was clearly relevant as against Miguel Beltrán, for which purpose it was admitted by the court.

The objection that the alleged confession of Miguel Beltrán was inadmissible is without weight. He was cited by the *fiscal* to come as a witness in a preliminary examination, and testified freely and voluntarily. The record shows be-

sides that none of the elements that would exclude a confession existed in this case.

There was an objection that the whole conspiracy was not proved when the testimony of the *fiscal* was heard by the court. The order of the testimony is discretionary in the court even in cases of conspiracy, as shown by the following cases:

"Where evidence had been given, tending to prove conspiracy, it was not necessary that conspiracy should be actually shown to have been formed before declarations of either conspirator can be proven. If conspiracy is not ultimately proved, such declarations must be disregarded; it is largely in discretion of court as to how much evidence of existence of conspiracy shall be required before receiving evidence of acts and declarations of one of alleged conspirators in absence of other." *People* v. *Daniels,* 105 Cal., 262, 265; 38 Pac. Rep., 720. See also *People v. Donnolly,* 143 Cal., 394, 398; 77 Pac. Rep., 177; *People* v. *Fehrenbach,* 102 Cal., 394; 36 Pac. Rep., 678; *People* v. *Van Horn,* 119 Cal., 323, 330; 51 Pac. Rep., 538; *People* v.*Compton,* 123 Cal., 403, 408; 56 Pac. Rep., 44; 8 Cyc., 680–3.

Furthermore, it was a trial by the court and the order of the proof would make little difference. (*Belber* v. *Calvo,* 16 P. R. R., 342; *People* v. *Silva,* 17 P. R. R., 577.

Another error alleged is that the court should have entertained the motion of the defendant to dismiss the complaint because, as it was founded on statements made to the *fiscal,* the statement of the witness ought to have accompanied the complaint. There is no requirement of the law that the *fiscal* should take written depositions. He corresponds to the grand jury. The cases of *People ex rel. Livingston* v. *Wyatt,* 10 L. R. A. (N. S.), 159, and *Kalloch* v. *Superior Court,* 56 Cal., 229, have no application to a responsible body like a grand jury or the *fiscal* under our law. Our law on this subject is set forth in sections 3 and 67 of the Code of Criminal Procedure.

The defendants also objected to the district court going on with the case, because there were no preliminary pro-

ceedings in a municipal court to hold the defendants. The law in Porto Rico requires no such preliminary proceedings where the case is begun on the sworn complaint or information of the *fiscal.* (*People* v. *Acosta,* 11 P. R. R., 240; *People* v. *Adorno,* 11 P. R. R., 1059; *People* v. *Díaz,* decided Nov. 21, 1912.)

It also seems that there was some examination before a municipal judge and the defendants wanted the statements of the witnesses so taken to be produced. If they existed and were competent, a *subpoena duces tecum* was available to the defendant. They would not have been competent evidence, except perhaps in cross-examination. The court committed no error in refusing to order the *fiscal* to produce any statements made to him.

There were some other objections relating to the weight of the evidence and the admission of a plan of the house. The weight of the evidence was for the court, and the plan of the house would show the situation of the house and give some idea of its value.

We find no error and the judgment must be affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, del Toro and Aldrey concurred.