## El Pueblo v. Beltrán et al.

Apelación procedente de la Corte de Distrito de Ponce.

No. 440.—Resuelto en diciembre 3, 1912.

Derecho Penal—Conspiración—Prueba Circunstancial.—Teniendo en cuenta el carácter secreto de las conspiraciones, por regla general es necesario probarlas por medio de prueba circunstancial.

Id.—Corpus Delicti—Prueba de la Conspiración—Admisiones Hechas por. Uno de los Conspiradores.—Una corte puede en el ejercicio de la facultad discrecional que tiene para dirigir el orden de la presentación de pruebas,. permitir al Fiscal que presente como prueba la confesión hecha por uno de los conspiradores al declarar como testigo en la investigación del delito practicada por el Fiscal, sobre todo cuando no se ha demostrado que dicha confesión no se hiciera libre y expontáneamente por el conspirador, y aun cuando en aquel momento del juicio no estuviera probada la existencia de la conspiración.

Id.—Prueba de la Conspiración—Actos de uno de los Conspiradores.—Aunque la regla general es que no se admita ninguna declaración de los conspiradores hasta que no se haya establecido primeramente la conspiración, la corte tiene la facultad discrecional de variar el orden de la prueba en cuanto a este particular, y su resolución en ese sentido no será revocada, siempre que las circunstancias del caso lo justifiquen.

Id.—Investigación por el Fiscal—Declaraciones de los Testigos.—La ley vigente en Puerto Rico no exige que un Fiscal tome por escrito las declaraciones prestadas por los testigos llamados a declarar ante él en la investigación de un delito, y tampoco exige la ley que una acusación presentada por un Fiscal venga acompañada de las declaraciones de los testigos por escrito.

Id.—Investigación Preliminar en una Corte Municipal.—La ley vigente en Puerto Rico no exige que se practique una investigación preliminar en una corte municipal, cuando el caso se inicia por medio de la acusación jurada del Fiscal, para que la corte de distrito pueda conocer del caso.

Id.—Pruebas—Investigación Preliminar ante una Corte Municipal—Declaración de Testigos.—Se resolvió en el caso de autos que el tribunal sentenciador no cometió error alguno al negarse a exigir al Fiscal que presentara las declaraciones prestadas por los testigos en la investigación preliminar practicada ante una corte municipal, pues suponiendo que fueran admisibles los acusados podían haber obtenido dichas declaraciones por medio de una citación *duces tecum.*

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. Nemesio R. Canales.*

Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

La presente es una apelación procedente de la Corte de.

Distrito de Ponce, en donde se originó esta causa a virtud de acusación presentada por el Fiscal contra Miguel y Desiderio Beltrán. La acusación alega en substancia que el día 7 de enero de 1912, los acusados voluntaria, maliciosa e ilegalmente conspiraron para cometer el delito de destrucción fraudulenta de bienes asegurados, consistente en quemar una casa propiedad del acusado Miguel Beltrán, sita en la calle Ruiz Belvis de esa ciudad, cuyo hecho trataron de realizar durante la noche del 7 al 8 de enero de 1912, estando asegurada dicha casa contra incendios en la Compañía de Seguros "Norwich Union Insurance Company," por la suma de 400 dollars, siendo la intención de los referidos acusados el defraudar a dicha compañía; a cuyo efecto ambos acusados introdujeron gasolina dentro de la referida casa el día 7 de enero de 1912, colocándola en distintos depósitos cerca de los cuales pusieron pajas y sacos y otros artículos fáciles de incendiar, cerrando herméticamente las puertas de dicha casa; y una vez terminados los preparativos ambos acusados abandonaron la casa y en la madrugada del siguiente día, o sea el 8 de enero, 1912, el acusado, Desiderio Beltrán, penetró de un modo clandestino y siempre de acuerdo con el otro acusado, Miguel Beltrán, en la casa de este último, con la intención de quemarla, en cuyo momento fué sorprendido por la policía.

El primero y principal fundamento del recurso es que la corte cometió error denegando la moción presentada por los acusados solicitando el sobreseimiento del caso al terminar la prueba del Fiscal. Alega la defensa, que no fué establecido el *corpus delicti*—esto es, el hecho de la conspiración misma—y alegó que la falta de esta parte esencial de la prueba no podía suplirse con manifestaciones o admisiones puestas en boca de Miguel Beltrán, y que descartando este elemento de prueba sólo quedaban los actos realizados por Desiderio Beltrán, de los cuales ni siquiera remotamente puede llegarse a la conclusión de que existió la confabulación o acuerdo entre ambos que es el *corpus delicti* en el presente

caso; que aun en el supuesto de que arbitrariamente se diera a las manifestaciones del Sr. Beltrán al Fiscal el carácter de una confesión, todavía esa confesión, no habiéndose establecido el *corpus delicti,* no podría afectar al otro acusado, y por consiguiente, no pudiendo probarse con dicha confesión que Desiderio Beltrán conspiró para realizar tal o cual acto, dicha confesión tampoco tendría valor en cuanto a Miguel Beltrán, ya que en todo delito de conspiración deben existir necesariamente dos o más personas culpables.

Independientemente de las admisiones hecha por Miguel Beltrán hubo prueba tendente a demostrar que Miguel Beltrán era dueño de una casa sita en la calle de Ruiz Belvis en Ponce, la que aseguró contra incendios en la Compañía de Aseguros ''Norwich Union,'' por la suma de 400 dollars, cuya casa sólo tenía un valor de 250 dollars; que la casa había estado habitada por Miguel Beltrán y poco antes de la supuesta tentativa para incendiarla, se mudó de ella, llevando su familia a vivir al campo; que Miguel Beltrán y Desiderio Beltrán son hermanos; que el día 7 de enero de 1912, a eso de las cuatro de la tarde el acusado Desiderio Beltrán estuvo en dicha casa acompañado de un hijo suyo, el que llevaba un saco debajo del brazo; que Desiderio Beltrán se quitó el gabán, dió una o dos vueltas por el patio y lo puso encima de la galería; que también llegó Miguel Beltrán y clavó una aldaba en la parte exterior de una puerta que da al patio, y luego entró al comedor, el día 7 de enero. En otras palabras, que en ese determinado día estas tres personas fueron vistas alrededor de esta casa que se encontraba desocupada. En la noche del referido 7 de enero como a las 11½ varias personas que pasaron por frente a la referida casa sintieron un olor desagradable a gasolina, lo que les llamó la atención hasta el extremo de darle cuenta a la policía; que la policía vino y entró en la casa y, al abrir la puerta que estaba cerrada con una aldaba, el olor se hizo más fuerte, y alumbrados con una vela vieron hacia el interior un montón de pajas que llegaban hasta el centro de la

sala, y eso venía a empalmar con una tina de madera cubierta de sacos o trapos y una caja vacía; que dicha tina estaba llena de gasolina; que el montón de paja seguía hasta otra habitación contigua, donde había también otra tina que contenía gasolina, que también estaba cubierta con sacos u otro material inflamable; que la puerta principal de la sala estaba cubierta con una cortina de sacos puesta interiormente y los agujeros tapados con trapos y papeles, y además los huecos y grietas estaban también tapados con papeles y trapos; que como a las 5½ de la mañana del día 8, Desiderio Beltrán saltó una empalizada, pasó por debajo de la casa, llegó hasta el portón y le puso la tranca, se subió al balcón donde se quitó la chaqueta que colocó en la baranda, metió un paquete dentro de un barril que había allí y cuando iba a abrir la puerta para entrar en la casa fué detenido por la policía que se había quedado vigilando; que el paquete que puso dentro del barril contenía 4 pedazos de velas y 1 caja de fósforos.

Aunque esta narración que se ha hecho de la evidencia no es la prueba más robusta que pudiera presentarse acerca de la existencia de un mismo plan entre los dos hermanos, sin embargo ella constituye prueba circunstancial robusta tendente a demostrar que Miguel y Desiderio Beltrán conspiraron para incendiar la casa.

La moción de sobreseimiento presentada se fundó en que la corte no tenía derecho a tomar en consideración las admisiones hechas por Miguel Beltrán, no habiendo por tanto explicación alguna en cuanto al hecho de haberse encontrado el material inflamable en la casa, la salida de la misma de Miguel Beltrán, la presencia de los dos hermanos por la tarde y la visita por la mañana temprano de Desiderio Beltrán, con lo que iba a dar comienzo al fuego. Toda esta serie de acontecimientos constituyó prueba por la que no podía llegarse a ninguna otra conclusión razonable sino la de que existió el propósito de pegar fuego a la casa, y de haber tramado conjuntamente los dos hermanos el proyecto de cobrar

el dinero del aseguro sobre una casa que había sido asegurada por un valor mayor del que tenía.

Es un hecho que resulta evidente si se tienen en cuenta las autoridades, que dado el carácter secreto de las conspiraciones, con frecuencia, si no generalmente, deben probarse mediante prueba circunstancial.

*People* v. *Donnolly,* 143 Cal., 398; *U. S.* v. *Sacia,* 2 Fed. Rep., 754–757; *U. S.* v. *Johnson,* 26 Fed. Rep., 684; *People* v. *Bentley,* 75 Cal., 409; *State* v. *Bingham,* 42 W. Va., 234; 24 S. E., 883.

Sin embargo, aun cuando no se les hubiera visto juntos a los dos acusados en un momento tan inmediatamente anterior a la entrada clandestina de Desiderio Beltrán y no se hubiera probado el *corpus delicti* que revela la existencia de un mismo plan, creemos que aun así la corte tenía derecho a tomar en consideración la prueba del Fiscal referente a la admisión o confesión de Miguel Beltrán. Este no es un caso en que se trata de establecer una relación entre el acusado y un propósito nefando por la manifestación de un cómplice que describe los actos y hechos de dicho acusado. Ya había quedado demostrado por la prueba que se presentó a la corte que Desiderio Beltrán había tenido el proyecto de quemar la casa de su hermano. Hubo prueba suficiente que demostraba que Desiderio Beltrán, ya por sí o con la ayuda de otros, hizo los preparativos para quemar la casa. La prueba hasta ese punto fué de tal naturaleza que resultaba enteramente compatible con el hecho relativo a la cooperación de otras personas, además de Desiderio Beltrán. ¿Cuál fué la admisión o confesión de Miguel Beltrán? Esta fué en efecto la de que había trasladado su familia al campo con motivo de la muerte de dos de sus hijos y puso la gasolina y otro material en la casa para desinfectarla. Esta admisión por sí sola no podía complicar en manera alguna a su hermano, y si algo significaba era que éste último no había tenido participación en el delito más grave de incendio malicioso, o en el de haber tratado de defraudar a un asegurador, o sea

el delito de *felony* que determina el artículo 478 del Código Penal. Dicha admisión era ciertamente pertinente como prueba en contra de Miguel Beltrán, con cuyo fin fué admitida por la corte.

La objeción de que la supuesta confesión de Miguel Beltrán era inadmisible, carece de fundamento. El fué citado por el Fiscal para comparecer como testigo en una investigación preliminar y declaró libre y voluntariamente. Además, aparece de los autos que en este caso no existió ninguno de los elementos por los cuales puede rechazarse una confesión.

Al terminar la prueba del Fiscal se formuló la objeción de que no se había probado la conspiración en su totalidad. El orden de la prueba es discrecional en la corte aun en los casos de conspiración, como se ve en la siguiente cita:

"Después de haberse presentado prueba tendente a probar una conspiración no era necesario que se demostrara que en realidad la conspiración se había formado, antes de que puedan probarse las declaraciones de cualquiera de los conspiradores. Si la conspiración no se prueba finalmente, deberá hacerse caso omiso de dichas declaraciones. Está confiado en gran parte a la discreción de la corte el determinar la prueba que ha de exigirse acerca de la existencia de la conspiración antes de que se admita prueba de los actos y declaraciones de uno de los supuestos conspiradores en ausencia del otro. (*People* v. *Danniels,* 105 Cal., 262, 265; 36 Pac. Rep., 720.)

"Aunque la regla general es que no se admitirá ninguna declaración de los conspiradores hasta que no se haya establecido primeramente la conspiración, la corte puede variar el orden de la prueba en cuanto a este particular, pues ese precepto no es imperativo; y siempre que las circunstancias lo justifiquen la acción de la corte variando dicho orden será aprobada. (*People* v. *Donnolly,* 143 Cal., 394, 398; 77 Pac. Rep., 177. Véase también *People* v. *Fehrenbach,* 102 Cal., 394; 36 Pac. Rep., 678; *People* v. *Van Horn,* 119 Cal., 323, 330; 51 Pac. Rep., 538; *People* v. *Complon,* 123 Cal., 403, 408; 56 Pac. Rep., 44; 8 Cyc., 580-3.)"

Además, era un juicio por la corte y el orden de la prueba no era de gran importancia. (*Belber* v. *Calvo,* 16 D. P. R., 360; *People* v. *Silva,* 17 D. P. R., 607.)

Otro error que ha sido alegado es que la corte debió haber tomado en consideración la moción que presentó el acusado para que se desestimara la acusación pues como se fundó en declaraciones que se hicieron al Fiscal, la declaración del testigo debió haberse acompañado a la acusación. La ley no exige que el Fiscal tome declaraciones por escrito. El hace las veces del gran jurado. Los casos de *People ex rel. Levingston* v. *Wyatt,* 10 L. R. A. (N. S.), 159, y *Kalloch* v. *Superior Court;* 56 Cal., 229, no tienen aplicación a un cuerpo de hombres responsables como el gran jurado, o el Fiscal según nuestra ley. La ley nuestra relativa a este punto se encuentra expresada en los artículos 3 y 67 del Código de Enjuiciamiento Criminal.

También formularon los acusados una objeción para que la corte de distrito no siguiera conociendo del caso por no haber habido procedimientos preliminares en una corte municipal para la detención de los acusados. La ley de Puerto Rico no exige ese procedimiento preliminar cuando el caso se inicia por denuncia o acusación jurada del Fiscal. (*People* v. *Acosta,* 11 D. P. R., 249–257; *People* v. *Adorno,* 17 D. P. R., 1102; *People* v. *Díaz,* resuelto en noviembre 21, 1912.)

También parece que hubo cierta investigación ante un juez municipal, y los acusados interesaban que las declaraciones de los testigos que fueron tomadas en dicha investigación se presentaran a las corte. Si existieron esas declaraciones y eran pertinentes, el acusado pudo haber hecho uso de una orden *subpoena duces tecum.* Tal vez si dichas manifestaciones solamente hubieran sido pertinentes en un examen de repreguntas. La corte no cometió error alguno al negarse a exigir al Fiscal que presentara cualesquiera declaraciones que se le hubieran hecho.

Se hicieron algunas otras objeciones relativas al peso de la prueba y a la admisión de un plano de la casa. El peso de la prueba era una cuestión de la incumbencia de la

corte, y el plano de la casa demostraría la situación de la misma y daría alguna idea de su valor.

No encontramos que se haya cometido error alguno y la sentencia debe confirmarse.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, del Toro y Aldrey.