[Crim. No. 5943.    Second Dist., Div. Three.    Nov. 27, 1957.]

THE PEOPLE, Respondent, v. CHARLES E. DAVIS, Appellant.

Thomas Higgins, Jr., for Appellant.

Edmund G. Brown, Attorney General, and Morris Schachter, Deputy Attorney General, for Respondent.

WOOD (Parker), J.—Defendant was accused of attempted extortion. Trial by jury was waived. Defendant was adjudged guilty. He appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that the evidence was insufficient to support the judgment.

Mr. John Schneider testified that he is assistant manager of a branch bank in Los Angeles; on his desk at the bank there was a name plate which could be seen by customers in the bank; on October 29, 1956, at 11 a. m., he was in the bank and at that time the defendant called him by name, handed a sealed envelope to him, and said that someone had asked him (defendant) to deliver the envelope; then he (witness) turned around to go to his desk to open the envelope and as he looked up the defendant was gone; less than a minute elapsed from the time the witness turned to open the envelope until he noticed that defendant was gone; he (witness) read the letter that was in the envelope.

The letter stated in part: "Mr. Schneider . . . Read this very carefully. It is a matter of life or death to you. . . . You will have *Twenty Thousand dollars* ready for us by your lunch time. , , , When your lunch hr. arrives you will bring

the money in a package or Briefcase to Coffee Dan's [restaurant] across the street. . . . A boy will pick up the money there. . . . These instructions must be followed to the letter. Or—you will die.''

Mr. Schneider testified further that after he read the letter he showed it to Police Officer Hancock and they discussed a plan about meeting someone; then the witness placed four one-dollar bills in an envelope and put the envelope and bills in his lunch sack; before he put the bills in the sack he recorded the serial numbers of the bills on a slip of paper; about 1 p. m. he left the bank and went across the street to Coffee Dan's restaurant and sat at the counter and put the lunch sack on the counter beside him; before he entered the restaurant he saw one Weber who was sitting on a bus bench in front of the restaurant; after the witness was at the counter, Weber went to him and said, ''Mr. Schneider, I understand I have a package to pick up from you''; the witness replied, ''There it was''; Weber took the package and walked away; as Weber left the restaurant Officer Munkres arrested him.

Officer Munkres testified that on October 29, 1956, about 12:45 p. m., he saw Weber who was sitting on a bus bench in front of Coffee Dan's; about 1 p. m., of that day he saw Mr. Schneider enter the restaurant and sit at the counter; then he saw Weber enter the restaurant and go to the men's room; about four minutes later Weber went to Mr. Schneider and apparently had a conversation with him; then Weber reached over and picked up the paper bag; the witness arrested Weber.

Officer Munkres also testified that on November 29, 1956, about 11:30 a. m., he arrested defendant in a liquor store; at the police station the witness told defendant that he was under arrest for extortion, that defendant and Weber had planned a $20,000 extortion from the Security-First National Bank in Hollywood, that Weber had written a note and that defendant had delivered it to Mr. Schneider in the bank; then the witness asked defendant if he had ever been in that bank located at the corner of Hollywood Boulevard and Highland Avenue (the bank where the letter was delivered); defendant replied, ''No''; the witness asked defendant if he was acquainted with Stanley Weber; he replied ''No''; the witness asked defendant if he had gone into a hot dog stand next to the Hartford Theatre with Weber; he replied that he had not been there and he did not know a person by the name of

Weber; the witness asked defendant about the note, and about the delivery of the note, demanding $20,000 from the bank; he replied that he knew nothing about it and he did not deliver it; on December 3, while the witness, the defendant, and Officer Hancock were on the way to the arraignment, defendant said that on October 29 he had gone into the bank and had delivered an envelope to Mr. Schneider for a friend by the name of Weber, and that he had not received any money or anything of value for delivering the note; the witness asked defendant if he knew the contents of the note he delivered; he replied that he did not know the contents.

Stanley Weber was called as a witness by the People. A deputy public defender was present as counsel for Weber, while Weber was a witness. Weber testified that he attempted to extort $20,000 from Mr. Schneider on October 29, 1956; he wrote the letter to Mr. Schneider; he did not deliver the letter to Mr. Schneider; he was sitting on a bench ''across from Coffee Dan's'' about 1 p. m. on October 29; he saw Mr. Schneider at the bank on October 29; he knows the defendant; he saw the defendant on the morning of October 29 in the Hollywood area. When the questions which preceded the above answers were asked, Weber said that he asserted his privilege against self-incrimination and on that ground refused to answer. The objections to those questions were overruled and the witness was directed to answer. (Prior to those rulings, the deputy district attorney asked the court to take judicial notice of the fact that in case No. 186569 Weber had pleaded guilty to the charge of attempted extortion, the same charge that is against defendant Davis.)

Defendant did not testify or call any witness in his behalf.

Appellant's argument, regarding insufficiency of the evidence, is that there was no showing that he knew the contents of the letter or that he had the intent to commit the crime; that all the acts of defendant, ''with the exception of his first conversation with the police officer later supplanted with a second conversation,'' could be the acts of an innocent person, and the evidence being susceptible of two reasonable interpretations one of which points to guilt and the other to innocence, the court should have adopted the interpretation that pointed to defendant's innocence. Appellant also argues that since the prosecution introduced statements of defendant to the effect that defendant's acts were harmless, the prosecution is bound by those statements in the absence of proof to the contrary. The statements so referred to (made in the

second conversation, on the way to the arraignment) were that defendant had delivered the envelope for a friend, and defendant did not receive any money or thing of value for delivering the envelope, and he did not know the contents of the note. With reference to the prosecution being bound by said statements of defendant, it appears there was evidence to the contrary of those statements. In the first conversation between the officers and defendant, the defendant said he had never been in the bank, he did not know Weber, he did not know anything about the note, and he did not deliver the note.

In *People* v. *Turner*, 86 Cal.App.2d 791 [195 P.2d 809], the defendant Nickson told the officers that he was not present at the shooting and was not aware of the shooting until the next day when he returned to get his lunch pail. At the trial therein the defendant testified that he was present and he fired the shots in self-defense. ■ In that case it was said at page 801: ''Guilty knowledge, as well as intent to violate the law, may be shown by the facts and circumstances in the case, including the conduct of an accused, and any false or misleading statements he may make to the arresting officers or others with relation to material facts, for the purpose of misleading, or warding off suspicion.''

In *People* v. *Roche*, 49 Cal.App.2d 459 [121 P.2d 865], it was said at page 462: ''It was in evidence that appellant at first denied to the officers but later admitted that she was driving the car that was involved in the accident. Her contradictory statements were admissible as tending in some degree to prove a consciousness of guilt.''

In *People* v. *Donnolly*, 143 Cal. 394 [77 P. 177], wherein the defendant was accused of murder, a man had been killed pursuant to prearrangement among several persons. The man had been riding on a streetcar and when he alighted some persons, who had been on the streetcar, followed him and killed him. The defendant Donnolly told the officers, at the time of the arrest, that he was not on the streetcar; but later, at the jail, he said he was on the streetcar. The court therein said at page 397: ''If the defendant in this case had been simply a passenger on the car, innocent of any intended crime, he certainly would have had no reason for denying that he had gone out as he did; but when confronted by Buckley and Moran, the proved conspirators, he was driven to the necessity of admitting the truth of the statement of Buckley that he had accompanied them out there. From these circumstances

the jury had a right to infer that it was the sense of his own guilt that compelled him to deny that he went out with the other parties, and that he was one of the party that committed the crime.''

 In the present case the trial judge could reasonably have inferred from defendant's contradictory statements that he delivered the letter with guilty knowledge and with intent to commit the crime.

Furthermore, defendant failed to testify and explain the evidence presented against him. Under such circumstances, the trial judge might consider such failure ''as tending to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable.'' (*People* v. *Adamson,* 27 Cal.2d 478, 490-491 [165 P.2d 3].)

The evidence was sufficient to support the judgment. The judgment and the order denying the motion for a new trial are affirmed.

Shinn, P. J., and Vallée, J., concurred.