Nixon, D. J.,
(charging jury.) The indictment in this ease is found under section 5440 of the Bevised Statutes of the United States. That section provides “that if two or more persons conspire either to commit any offence against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, all the parties to sueh conspiracy shall be liable to a penalty,” etc.
The offence, you perceive, consists in two or more persons conspiring to defraud the government in any manner whatever, in a case where one or more parties to the conspiracy shall do any act to effect the object — that is, to effect the fraud. It need not be successful. It may fall short of the actual commission of the fraud. Merely agreeing or combining together to commit the fraud is sufficient to constitute the offence, without any loss to the government, if any one of the parties has taken a step towards its execution. The section is very sweeping in its terms, and was doubtless intended to meet the party to the fraud against the government on the very threshold of the perpetration of his crime, and to render him liable to its penalties before the consummation of the fraud.
*756 In the present case the indictment has been found against nine defendants, to-wit: Jane H. Lewis, Andrew J. Park, Marcus T. Sacia, Frank Allison, alias Ward, Henry T. Bass-ford, George B. Bradford, George W. Westbrook, Mary T. Bussell, and Frances Helen Peabody. Five of them only are now on trial, to-wit: Andrew J. Park, Marcus T, Sacia, Frank Allison, Henry T. Bassford-, and George B. Bradford.
The general charge against them is that they combined and confederated together to defraud the United States, and that one or more acts were performed by one or more of the parties to give effect to the fraud.
The indictment specifically sets forth that the nine defendants named therein entered into a conspiracy to defraud the United States in the following manner: By depriving the United States of the benefit and advantage of the provisions of a certain last will and testament, made on the first day of October, 1878, by one Joseph L. Lewis, whereby he devised and bequeathed, after making certain legacies,' all the rest of his property, amounting in value to more than .$1,000,000, as follows: “I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, and of every kind whatsoever, of which I may die seized and possessed, and to which, at my death, I may be entitled, unto my executors, in trust, to expend and apply in reducing the national debt of the United States of America, contracted in the cause of the rebellion in 1861,” which said will was duly made and executed by said Joseph L. Lewis, who afterwards,' on March 5, 1877, at Hoboken, in said district, departed this life, leaving the same unrevoked, and was duly presented for probate to the ordinary of the state of New Jersey; and further, by preventing the said residuary bequest from being applied by the said executors to the use of the United States, as provided in said will, by falsely and fraudulently opposing the lawful probate of said will, and falsely pretending that the said Jennie Holbrook was, in fact, the widow of the said testator, and that the said will was invalid and of no effect, and that she, as said widow, was entitled to a large share of the said estate bequeathed as aforesaid for the benefit of the *757 United States, and fraudulently, and by false testimony, preventing the said will from being proved before the ordinary, and thereby preventing the said bequest from taking effect and being applied to the use of the United States in manner aforesaid.
The jury is thus brought to the consideration of three questions, and the court suggests that when you retire to deliberate upon your verdict you should consider them separately, in the order stated: (1) Has the government proved the existence of such a conspiracy as is described in the indictment ? (2) Were any of the alleged acts performed by one or more of the parties to give effect to the fraud ? (3) If such a conspiracy existed were any of the defendants members of it ?
1. Has a conspiracy to defraud the United States been entered into?
The general definition of a conspiracy is an agreement or combination between two or more persons to effect an unlawful purpose.
The statutory offence, under the laws of the United States, is not complete, however, until an act is done by some of the parties to carry into execution the fraud.
The agreement or combination is the offence, but the performance of the alleged act to effectuate it is necessary to make it indictable in this court; and such an offence is rarely provable by direct testimony. All the text books agree that the evidence in proof of the conspiracy may be, and from the nature of the case generally must be, circumstantial. All concerted action to violate the law or to commit a fraud is secret, and is ordinarily shown by separate independent acts, tending to exhibit a common design. The common design is the essence of the charge, and to prove it it is not necessary to prove that the parties came together and actually agreed in terms to have that design, and to pursue it by common means.
The jury will be justified in inferring the existence of a conspiracy when the government satisfies you beyond a reasonable doubt, by the testimony of credible witnesses, that any two or more of the parties charged aimed, by their acts,. *758 to accomplish the same unlawful purpose or object, one performing one part, and another another part of the same, so as to complete it, although they never met together to concert the means, or to give effect to the design. Nor is it necessary that the conspiracy should originate with the persons charged. Every one coming into a conspiracy at any stage of the proceedings, with knowledge of its existence, is regarded in law as a party to all the acts done by any of the other parties, before or afterwards, in furtherance of the common design. 8 Gr. Ev. § 93.
In determining the question of conspiracy it will be safe for you to reckon Mrs. Lewis as one of the parties. She confesses in her testimony, and by her plea of guilty to this indictment, that she was one, and however much you may be disposed to weigh or sift or doubt her evidence as to others, you are authorized to accept it as altogether true as to herself. Did she stand alone in her attempt to defraud the government, or were others implicated with her ? If one other, then you will find that a conspiracy was formed, because only two are necessary to complete the offence. She states that one of the defendants, Park, originated the scheme for her to personate the widow of Joseph L. Lewis, in order to defraud the United States, and that his motive in doing so was to share with her the fruits, to-wit, the money to be obtained from the estate of Lewis.
Much has been said as to the weight which the jury ought to give to the testimony of co-conspirators, and here is perhaps the proper place for me to submit to you a few observations on that subject. The fact that a witness is a co-conspirator doubtless operates, and ought to operate, largely against the credibility of his testimony, but the jury is not bound to reject it on that account. Whilst it would be unsafe, in ordinary cases, to convict any one upon the uncorroborated testimony of accomplices • in the crime, the rule of law undoubtedly is that they are competent witnesses, and it is your duty to consider their evidence. You are to weigh it and scrutinize it with great care. You are to test its truth by inquiring into the probable motive which prompted it. You *759 are to look into the testimony of other witnesses for corroborating facts. Where it is supported in material respects you are bound to credit it, but where it is unsupported you are not to rely upon it, unless, after the exercise of extreme caution, it produces in your minds the most positive conviction of its truth.
Applying these well known principles of law to the case in hand, it will be your duty to inquire whether any other of the alleged conspirators were concerned with Mrs. Lewis in the attempt to defraud. One is sufficient, as I have already said, to make the offence complete. If her testimony, standing alone, produces in your minds absolute conviction of its truth, then you are at liberty to say, without looking further, that Dr. Park was in the conspiracy. If the testimony of Elijah Caldwell, another of the confessed conspirators, is accepted by you as true, you must also reach the conclusion that Sacia, Allison and Bassford were parties to the fraud. But if, in consequence of the previous misconduct of Mrs. Lewis and Mr. Caldwell, or if, in consequence of the revelations made in regard to their character during these proceedings, you are not willing to accept their individual testimony as true, then you should carefully inquire whether she or he has been corroborated in any material particulars; you will ascertain how far the testimony of Mr. and Mrs. Benson, the detective Julian, Mrs. Echorn, Judge Fullerton, and Mr. Whetlock, taken in connection with Dr. Park’s own evidence, supports or fails to support Mrs. Lewis in regard to the defendant Park, and how far the testimony of O’Keefe, Julian, Mrs. Echorn, Mr. Lyons and young Caldwell supports or fails to support Elijah Caldwell. If, in either case, you find such corroboration, that you have no reasonable doubt about the connection of some of these parties with Mrs. Lewis in her attempt to defraud, you should not refuse to say so, because the direct testimony against them comes from the mouths of co-conspirators — the only source from which direct testimony usually comes in eases of this sort.
If, however, the government has failed to convince you that *760 any one of the defendants on trial was a party to the conspiracy at any stage of the proceedings, the case ends, and these persons are entitled to a verdict of acquittal.
2. If you come to the conclusion, as probably you will, that a conspiracy existed, your next inquiry will be, were any of the alleged acts done by one or more of the parties to give effect to the fraud?
The importance of this inquiry grows out of two facts: First, if none were performed the indictment cannot be sustained ; second,, if any one act was done by any one of the conspirators in furtherance of the fraud, every conspirator is chargeable in law with doing it, and is responsible for it and all the consequences which primarily flow from it.
Bemembering this peculiar feature of the law in regard to conspiracy you will have no trouble here. It is admitted, for instance, that Mrs. Lewis falsely personated the widow of Joseph L. Lewis, and it is hardly to be disputed that she obstructed the probate of the will and payment of the legacy to the United States by filing a caveat. Every one of the defendants who are concerned with her in the conspiracy is to be treated as if he performed the act which she admits. Or, to take another illustration, Dr. Park went to Judge Fullerton to employ him as additional counsel to aid Mrs. Lewis in proving that she was the widow of Joseph L. Lewis. If he knew she was not the widow, he and every other defendant here charged, who are shown to be parties to the fraudulent combination, are to be held responsible for the act.
You will hence perceive, gentlemen, that it is not necessary that I should occupy your time with this inqury.
I proceed to the consideration of the third inquiry, which will doubtless give you more difficulty.
3, Finding that the conspiracy existed, and that some act was done to give it effect, the last inquiry is, were any of the defendants members of it ? ,
I have no intention to review the evidence. You have heard the ablt argument of the counsel of the respective parties. Nor is it my province or disposition to express any *761 opinion as to the facts. It is for you to determine how far the testimony goes to satisfy you of the connection of the several defendants with the conspiracy.
I would suggest, however, that you take up the cases of each one of the defendants separately, and apply the testimony. For instance, consider the connection of Dr. Park. The testimony affecting him is direct and circumstantial. The only direct testimony is that of Mrs. Lewis, and he as directly denies the connection as she unequivocally charges it. His counsel very forcibly put the question to you, which will you believe, Mrs. Lewis or Dr. Park ? It was and is a proper inquiry to make; but, in answering it, you are to bring into the account one or two things, which the counsel overlooked, or did not advert to — you will inquire what motive the parties had to assert or deny the fact: First, the motive of Mrs. Lewis in asserting it; and, secondly, the motive of Dr. Park in denying it.
The course of conduct in every one is influenced by motive. Has anything appeared in the cause which, in your judgment, would prompt a bad woman like Mrs. Lewis to falsely charge Dr. Park with complicity in the fraud ? How does she benefit herself by attempting unjustly to drag him in? With regard to his testimony, he has every motive to deny it. You must ask yourselves, how, and how far, the advantage which must result to him affects the credibility of his testimony.
After thus contrasting the testimony of Mrs. LewiB and Dr. Park in the light of the motives which prompted it, turn to the other witnesses and ascertain how far they are supported and corroborated in any material points in the case.
I do not understand what the counsel for this defendant meant by saying to you that you had no right to believe a part of what Dr. Park says and disbelieve another part. I do not so interpret the duty of the jury. You may accept a portion of his testimony and reject another portion, if, comparing it with itself as a whole, and with the other witnesses, you are led to do so. Look at the testimony of the Bensons in this connection. The government charges that all of Park’s steps in that direction were to get the necessary facts to aid Mrs. *762 Lewis in carrying out the fraud. Dr. Park says that, on ths contrary, the information was obtained solely to prepare an article on the deceased Lewis for publication, and the reason assigned for not publishing is that the reporters had anticipated him. Inquire how the facts of the interview with the Bensons support these respective contentions. I was somewhat impressed with the importance which Dr. Park seemed, by his conduct, to attach to the color of the eyes of one or two of Lewis’ old servants. Both Mr. and Mrs. Benson allude to the anxiety of the doctor on the subject.
The jury will inquire whether that was an important fact in posting Mrs. Lewis as to her duties and responsibilities, or an important fact to disclose to the public in an article in reference to the life and habits of Lewis. You have listened to the comments of the respective counsel, as to his motives in obtaining the information, and it is for you to decide where the truth lies.
The district attorney and the counsel for the defendants have entered so fully into the evidence of the different witnesses, showing the corroboration or want of corroboration to be found there, that I do not deem it necessary to pursue the subject further. I will only add, that if the testimony of Mrs. Lewis in regard to Park, taken in connection with his own evidence and the corroboration of other witnesses, do not satisfy you beyond a reasonable doubt that he was a party to the conspiracy, with a knowledge at any stage of the proceedings of the attempted fraud, it is your duty to acquit him. If, on the other hand, you have no reasonable doubt of the fact, you must not be deterred by any consideration of sympathy or mercy from finding him guilty. Your duty is to decide according to the evidence, without regard to the consequences.
You will then proceed in the same manner to consider the case of the other defendants. The direct testimony in regard to them is, to a small extent, from Mrs. Lewis, but mainly from Elijah Caldwell. If he speaks the truth, then, doubtless, Sacia, Allison and Bassf ord are parties to the fraud. But he .also was, in the earlier stages of the proceedings in the state *763 court, a co-conspirator, and you may desire to have some corroboration of his testimony before you are willing to find the defendants guilty. If so, it will be your duty to ascertain whether Arnaux, Julian, Mrs. Echorn, Lyons and Henry Caldwell have so supplied the missing links in the chain of evidence as to satisfy you beyond a reasonable doubt that they were connected with the conspiracy. If yea, you will convict, and if not, it will be your duty to acquit.
With these observations I leave the ease with you. Examine it without prejudice or partiality, and give the verdict of your honest judgment, as I am sure you will, according to the evidence. You may give to each one the benefit of every reasonable doubt respecting their guilt, and in all your deliberations remember that you are trying these defendants, not for the general misconduct and bad habits of their life, not for perjury in the state courts, but for a conspiracy formed to defraud the government of the United States.
Before the jury retired the counsel for the defendants handed up to the judge a large number of requests to charge. After examination Judge Nixon said that he had, in substance, embraced all these requests of which he approved in the charge already delivered, and that in regard to those of which he did not approve they were embraced in the following, to-wit: That while the will of Joseph L. Lewis vested in the executors, as trustees, the legal title to the residue of his estate, after the payment of the specific legacies, the United States had a beneficial equitable interest in the estate, of which it might be defrauded; and if the defendants, or any of them, entered into the conspiracy, and one of them performed any act to give it effect, he or they are guilty of the conspiracy to defraud the United States, and liable under the law for the consequences.
The jury found all the defendants guilty.