PEOPLE, PLAINTIFF AND APPELLEE, *v.* JULIÁ ET AL., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of San Juan, Section 2, in a Prosecution for Conspiracy.

No. 1111.—Decided May 21, 1917.

CONSPIRACY—DISTRICT JUDGE—JURISDICTION.—The authority given to the Governor by the Act reorganizing the judiciary, of March 10, 1904, that when the public service requires it he may order one district judge to occupy the position of another who may be temporarily disqualified, is not limited to cases of legal disqualification but includes cases of disqualification by sickness, absence, or any other cause.

ID.—ID.—OATH OF OFFICE.—A district judge does not cease to be such judge while on leave of absence for a certain number of days, and, therefore, may administer the oath of office to the judge who is to substitute him, and the latter is not the judge of the court until he has taken such oath.

ID.—INFORMATION—OVERT ACT.—In this case the information charged that, being a member of the board of examiners of candidates for licenses in pharmacy, the defendants combined and agreed to approve the examinations of certain such candidates, who were not lawfully qualified to be enrolled and admitted to examination, and furnished them with the answers which they had to give to the questions of the examinations in order to obtain diplomas in pharmacy, with the understanding that copies of such answers would be returned to the defendants who would approve such examination and get the other members of the board to approve them in order thus to issue to the candidates licenses for the practice of the profession of pharmacists in this Island, these acts being prejudicial to the public health and tending to pervert the due administration of the laws by issuing diplomas in pharmacy to incapable persons ignorant of their profession. *Held:* That the object of the conspiracy was to issue corruptly diplomas in pharmacy to incapable persons, and that, according to sections 62 and 63 of the Penal

Code and section 246 of the Code of Criminal Procedure, the information was sufficient, it not being necessary to allege therein that the defendants committed the  act of approving the examinations, for under the statutes it is sufficient to allege some act tending to the realization of the object of the conspiracy.

ID.—INTENT.—It is a fixed rule of law and jurisprudence that every person intends the natural consequences of his acts, therefore charging one with intentionally entering into a conspiracy which necessarily and directly produces the result desired to be prevented by the statute is in law charging him with having intended the result.

ID.—EVIDENCE.—There is strong circumstantial evidence tending to show that the defendants conspired to admit to examination persons not qualified therefor and to issue diplomas to persons ignorant of the profession of pharmacy, furnishing them with the answers because they did not know the subjects required by law, and that for this purpose some of the conspirators performed some acts and others other acts, which is sufficient to lead to the conclusion that there was a conspiracy among them for that purpose, and that is contrary to the public health and the due administration of the laws inasmuch as it is not necessary to prove the conspiracy itself, because generally it would be impossible to do so by direct evidence considering the secrecy with which such plans are adopted. Generally, the evidence consists of inferences and deductions derived from the acts committed; it being sufficient when one executes a part of the plan of conspiracy and the other another part of the same in order to complete it, although they never united to agree upon the methods or to put the common purpose into practice.

ID.—ID.—VARIANCE—MOTIVE.—There is no variance between the information and the evidence in this case, for although the proof showed distinct acts of solicitation of money by the defendants for approving the examinations of the candidates and admitting them to examination without their being qualified therefor, this was the manner of proving the acts which tended to the commission of the crime charged against them in the information. The particular motive of the conspiracy was not important, for any other motive than that of receiving money could have been proved provided that some motive were proved for the conspiracy of the defendants to commit acts contrary to the due administration of the laws and prejudicial to the public health.

ID.—ID.—GOVERNMENT AGENT.—It is no defense that an agent of the Government may have pretended to give his consent by furnishing the means for the commission of a crime when it is not attempted to prove the said crime, but to prove that there was a general plan for the commission of criminal acts.

ID.—ID.—DISCRETION OF COURT.—The court has discretional power as to the order of admitting evidence, therefore a defendant is not prejudiced by the admission of the testimony of one witness before the admission of that of another.

ID.—ID.—DOCUMENTARY EVIDENCE.—A defendant is not prejudiced by the admission of documentary evidence where the contents of the document are also testified to by witnesses.

ID.—ID.—HEARSAY EVIDENCE.—When a case is tried to the judge and he admits hearsay evidence, stating that it will be given the weight which it may have in law, this is not reversible error.

The facts are stated in the opinion.

*Messrs. J. Henri Brown* and *Manuel F. Rossy* for the appellants.

*Messrs. Earle T. Fiddler,* Assistant Attorney General, *Salvador Mestre, Fiscal* of the Supreme Court, and *Luis Campillo,* District *Fiscal,* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

Appellants Pedro Juliá, Clemente Ramírez and José Calderón Aponte, together with other persons, were charged with the crime of conspiracy in the District Court of San Juan, Section 2. The three persons named were found guilty of the said crime and took this appeal from the judgment of conviction. The others were acquitted. Appellant Juliá did not appear in the appeal. Calderón Aponte did not file in time a brief assigning the errors on which he relied for reversal of the judgment, but his attorney appeared at the hearing on the appeal and submitted his case on oral argument. The other appellant, Clemente Ramírez de Arellano, filed a brief assigning four errors as grounds for reversal of the judgment rendered against him, and his attorney also appeared at the hearing before this court.

The information filed by the district attorney charges that the appellants, together with others whose names need not be mentioned here, committed the crime of conspiracy in that in the judicial district of San Juan between the months of September, 1914, and February, 1915, while the three appellants were lawfully appointed members of the Board of Pharmacy of this Island and as such were members of the Board of Examiners of applicants for licenses to practice as pharmacists, they unlawfully, wilfully and maliciously combined, conspired and agreed to approve the examination papers of Francisco Carmona Rivera, Eduardo Platet, Jesús María López Molina, Manuel Colón Bonilla,

José Luis Weiwar, Armando Font Rodríguez, Eduardo Badó, Juana Albandoz, Eleuteria Colón and Santiago Rodríguez, applicants for licenses as pharmacists, whose examinations were set for and held in this city of San Juan in the month of January, 1915, the said persons not being legally qualified for enrollment and admission to examination, supplying them with the answers to the questions corresponding to each and all of the subjects which the law prescribes shall be and which were included in the examinations required to be passed by them in order to obtain licenses to practice as pharmacists, with the understanding that the said candidates would copy the said answers to the examination questions and then return to them the said copies, the defendants agreeing to approve and procure that the other members of the examining board approve the examinations so copied and in this unlawful, corrupt and malicious manner issue to the applicants the certificates and licenses for the practice of the profession of pharmacy in this Island, the said answers having been returned to the said defendants together with the copies thereof made by the said candidates for examination, such acts being detrimental to the public health and tended to pervert or obstruct justice or the due administration of the law by issuing diplomas and licenses for the practice of the profession of pharmacy in Porto Rico to incompetent persons ignorant of the requirements of their profession.

As one of the grounds upon which appellant Clemente Ramírez bases his appeal praying for the reversal of the judgment appealed from is that Judge Sepúlveda, before whom the case was tried, was without jurisdiction to sit at the trial of the same, we think it advisable to dispose of this question first.

By reason of the penalty prescribed therefor, the offense charged is a misdemeanor and therefore was not tried to a jury but to the judge of the District Court of San Juan. The trial began on June 24, 1915, and judgment was rendered

two days later, Judge Sepúlveda of the District Court of
Ponce sitting by virtue of his appointment by the Governor
of this Island to dispose of all matters coming before sections
1 and 2 of the District Court of San Juan from June 22 to
June 26, 1915. The said appointment stated as the reason
therefor that the judge of section 1 was in the United States
on leave of absence and that the judge of section 2 had been
granted leave of absence from June 22 to June 26, 1915. By
virtue of this appointment Judge Sepúlveda of the District
Court of Ponce was administered the oath as judge of the
district of San Juan on the 22d of June by the judge of sec-
tion 2, Jesús María Rossy.

The first ground on which appellant Ramírez bases his
contention that Judge Sepúlveda was not qualified to act as
judge in this case is that, according to section 2 of the Act
of March 10, 1904, reorganizing the judiciary, the Governor
may order a district judge to fulfil the duties of another
district judge only when the latter is temporarily disqualified,
the appellant understanding this to mean incapacitated for
some legal reason to discharge his duties, but that such in-
capacity does not include absence on leave.

The said section of the act authorizes the Governor of
the Island, if the public service requires it, to order a district
judge to take the place of any other regularly appointed dis-
trict judge who may be temporarily disqualified, either on
account of illness or any other cause. Its wording clearly
shows that the authority given to the Governor is not only
to make appointments when the regular judge is disqualified
in the legal sense of this word, or when he cannot lawfully
sit in the case, but that it also refers to disqualification on
account of illness or any other cause. It is broader than
the meaning sought to be given it by the appellant and con-
templates not only cases of illness and legal disqualification
but also any other cause which prevents the judge from act-
ing in the case, and as in this case the regular incumbent,
Judge Rossy, was absent from the court on leave, the Gov-

ernor had authority to appoint another district judge to substitute him during his leave of absence for the good of the public service; therefore we cannot hold that the error assigned by the appellant was committed.

The appellant also contends that it may be doubtful whether the oath administered by Judge Rossy to Judge Sepúlveda is legal because on the day on which it was administered Judge Rossy was disqualified to discharge any of the duties of his office. Judge Rossy did not cease to be such judge because he had been granted leave of absence during the period stated; therefore he could administer a valid oath to Judge Sepúlveda, who was not legally judge of the District Court of San Juan, Section 2, until he had taken such oath, and we fail to see that it was not legal.

Another of the grounds of appeal, which is stated under Assignment of Errors No. 1, is that the acts charged in the information do not constitute a public offense.

The information charges, in brief, that the defendants, being members of the board of examiners of candidates for licenses to practice as pharmacists, combined and agreed to approve the examinations of certain candidates for licenses as pharmacists who were not legally qualified to be enrolled and admitted to examination and furnished them with the answers to the questions to be answered by them in order to obtain their licenses as pharmacists with the object of approving the copies and procuring that the other members of the examining board approve such examinations in order thus to issue to them the certificates and licenses for the practice of the profession of pharmacy in this Island, which acts are prejudicial to the public health and tended to pervert the due administration of the laws by issuing certificates as pharmacists to persons who were incompetent and ignorant of the requirements of the profession.

As is clearly seen from the above summary of the information, the conspiracy of three of the five members of the examining board consisted in issuing licenses as pharma-

cists to persons incapable of practicing such profession and the acts committed by them consisted in admitting such persons to examination although they were not legally entitled to be enrolled, and in approving the copied answers which they were required to give to secure their licenses as pharmacists.

According to section 62 of the Penal Code, conspiracy is committed, among other cases, when two or more persons conspire to commit any act injurious to the public health, or for the perversion or obstruction of justice or due administration of the laws, and section 63 provides that no agreement, except to commit a felony upon the person of another, or to commit arson, or burglary, amounts to conspiracy, unless some act, besides such agreement, be done to effect the object thereof, by one or more of the parties to such agreement. And section 246 of the Code of Criminal Procedure provides that upon a trial for conspiracy, in a case where an overt act is necessary to constitute the offense, the defendant cannot be convicted unless one or more overt acts are expressly alleged in the information, nor unless one of the acts alleged is proved; but other overt acts not alleged may be given in evidence.

According to these statutes the information in this case is sufficient, because the object of the conspiracy of the three members of the board of examiners of candidates for licenses to practice pharmacy being to issue corruptly diplomas as pharmacists to certain persons who were not legally qualified to be enrolled and admitted to examination and to receive the diplomas, the said information alleges that the conspirators committed acts to effect the conspiracy of admitting the said candidates to examination, such as furnishing them answers to the questions which they were required to answer in the subjects prescribed by law to be included in the examinations necessary for obtaining such diplomas, which facts, if really committed, as it must be presumed they were in

considering the sufficiency of the information, show that the defendants had committed overt acts to effect the conspiracy.

That is all that the information need contain for such an offense as that charged in the present case; therefore it was sufficient, and it was not necessary to allege, as claimed by the appellant, that the defendants committed the act of approving the examinations, which was the purpose of the conspiracy. Under the statute it is sufficient to allege that some act was done to effect the object of the conspiracy.

That the object of the conspiracy was an act injurious to the public health and obstructive of the due administration of the law cannot be doubted for a moment. There is a law in force in Porto Rico creating a Board of Pharmacy whose object, as its wording shows, is to prevent persons lacking certain knowledge from practicing the profession of pharmacist in the interests of public health and welfare, thus avoiding the sale and offering for sale of drugs, many of which are capable of producing illness and even death, by persons incompetent by lack of such knowledge. It is a statute which is highly beneficial to the common good and which has been in force in this Island for many years. In order to attain this result the law created a board composed of five skilled pharmacists of good repute residing in this Island who have been duly graduated and have practiced the profession for more than four years, whose duty it is to issue diplomas in pharmacy to such persons as show to the board that they are educated in certain subjects enumerated in the statute, and, in addition, such applicants for diplomas must have taken a certain general course of studies previously, such as having passed an examination embracing all the scientific and literary subjects at some high school of the Island or at some reputed similar or analogous institution of the United States or elsewhere satisfactory to the board. Moreover, candidates for diplomas as pharmacists must show by a certificate signed and sworn to by an apothecary that they have practiced in said apothecary's drug store for not less than

two years. Again, the candidates must be enrolled during the first half of October in order to take the examination in the second half of January and June, and all the expenses required by the Act are covered by an examination fee of $10 to be deposited with the secretary and $25 for the issuance of the license. The examinations are to be in writing.

Therefore, if the defendant-appellants, as members of the said Board of Pharmacy, agreed and conspired to admit disqualified persons to examination and to issue to them diplomas as pharmacists, and one of the means employed to effect this was to furnish them the answers which the candidates were required to give to the questions put to them in accordance with the statute, there is no doubt, not only that such conspiracy was against the public health because that result was the natural consequence of their acts, but also that it was contrary to the said statute with whose compliance they were charged, inasmuch as it was their duty to exact the documents necessary for admitting the candidates to examination, to propound the questions to be answered, to grade the examination papers and to issue the certificates or diplomas as pharmacists. It is a well-settled rule of law and jurisprudence that every person intends the natural consequences of his acts, and in the case of *United States* v. *Patten,* 226 U. S. 525, which was for conspiracy, the court said on page 543, among other things:

"In other words, by purposely engaging in a conspiracy which necessarily and directly produces the result which the statute is designed to prevent, they (the conspirators) are, in legal contemplation, chargeable with intending that result. *Addyston Pipe & Steel Co.* v. *United States,* 175 U. S. 211, 243; *United States* v. *Reading Co.,* 226 U. S., 324, 370."

Therefore it was not necessary that the information in the case under consideration should allege the intent more specifically than it did.

If the information had failed to allege that the appellants admitted unqualified persons to examination and that

they furnished the latter with the answers to be given thereto, then appellant Ramírez would be right in saying that the agreement to approve the examinations was in compliance with law, but not so in view of the allegation contained in the information, inasmuch as the law is not complied with by supplying the answers in order that the candidates who had to copy the answers in the various subjects of the profession might appear as persons qualified as pharmacists.

The appellant complains that the district attorney made no allegation in the information regarding individual bribes while in the trial he undertook to prove such bribes, but the fact is that that evidence was not introduced to prove bribes but by proving bribes to show the commission of the conspiracy generally. The information did not contemplate individual bribes but a corrupt system of allowing unqualified persons to obtain diplomas.

As to the criminal intent of the conspiracy, that results from the very acts charged in the information, for inasmuch as the law requires certain qualifications for obtaining a diploma as pharmacist, the conspiracy to issue the same to persons who lack such qualifications since they have to copy the answers, shows clearly that they intended to issue diplomas to persons whom the law desired to exclude from the practice of the profession of pharmacy, thus inflicting a wilful and criminal injury upon the public for whose benefit the statute was enacted, and the mere act of furnishing the answers also shows that the appellants knew that the said candidates were not familiar with the subjects prescribed by the law.

The third assignment of error is that it was not proved that the appellant Ramírez committed the crime of conspiracy charged in the information.

In support of this contention the appellant maintains that the evidence tended to show the commission of distinct offenses of bribery, in each one of which the principals were different persons and that all of the three defendants who

were convicted of conspiracy took part in none of them; that there was proof tending to show that Juana Albandoz had paid appellant Ramírez $100 for answers to questions and that Edelmira Santana, one of the defendants who was acquitted, took part in this transaction, but that there is no evidence to connect any of the other defendants with the transactions; that there was evidence tending to show that Jorge Weiwar had paid defendant Juliá $125 to be allowed to copy answers, but there was no evidence to show that any of the other defendants took part in or was connected with that transaction; that there was also evidence tending to show that Jesús María López Molina bribed defendant Calderón Aponte in connection with the examinations, but that there was no evidence that any of the other defendants had anything to do with or had any knowledge of the López Molina transaction; that there was evidence tending to show that Manuel Colón Bonilla had bribed Ramírez and Juliá to be allowed to enroll and take the examination.

But the fact is that the evidence showed besides that appellant Pedro Juliá, President of the Board of Pharmacy, was the only person in charge of the enrollment of candidates for examination and of the documents to be presented to secure enrollment; that Juana Albandoz, who paid $100 to Edelmira Santana, a defendant who was acquitted, because appellant Ramírez told him to arrange with her about the money, was enrolled and admitted to examination although she had not taken the preliminary course of studies required by law, for she did not have a high-school or even an eighth-grade diploma, having reached only the fifth grade in the public schools and had not studied any of the subjects in pharmacy but copied the answers thereto which appellant Ramírez had furnished her.

The evidence also showed that López Molina, who agreed in writing to pay $200 to appellant Calderón Aponte for admission to examination in order that he be given a diploma without having practiced for two years in a drug store as

required by law, was enrolled and admitted to examination by appellant Juliá, who was in charge of the enrollment of applicants.

The evidence further showed that Manuel Colón Bonilla, from whom Calderón Aponte demanded $400, and who subsequently agreed to pay Juliá and Ramírez jointly the sum of $500, was admitted to examination in order to obtain a diploma without having the two years' practice, which requirement Juliá supplied by a false certificate which he secured from an apothecary. Juliá also supplied his lack of the preliminary studies by means of another false certificate obtained by him, and defendant Ramírez furnished this candidate with the questions so that he might copy them.

These several acts were strong circumstantial evidence that the defendants were in combination to admit unqualified persons to examination and to issue diplomas to persons ignorant of the profession of pharmacy by furnishing them with answers because they were not familiar with the subjects prescribed by law and that to this end some of the conspirators performed certain acts and others other acts, which is sufficient to justify the conclusion that there was a conspiracy among them for the said purpose injurious to the public health and to the due administration of the laws, for it is not necessary to prove the conspiracy itself because generally it would be impossible to produce such proof by direct evidence in view of the secrecy with which such plans are adopted. The evidence generally consists of inferences or presumptions arising from the commission of certain acts and it is sufficient when one conspirator performs a part of the plan of the conspiracy and the other another part thereof in order to complete it, although they never got together to concert the methods or to put in practice the common purpose. *People v. Donnelly,* 143 Cal. 398; *United States v. Sacia,* 2 Fed. 754. In *People v. Bentley,* 75 Cal. 409, the following is quoted from 3 Greenleaf on Evidence, sec. 93:

"If it be proved that the defendants pursued by their acts the

same object, often by the same means, one performing one part and another another part of the same so as to complete it, with a view to the attainment of the same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object."

In this case the circumstantial evidence is such that a consideration thereof can lead to no hypothesis consistent with the innocence of the appellants.

Although the appellant Ramírez contends that the testimony of Juana Albandoz was not corroborated, the contrary is shown by the documentary evidence introduced regarding her, for a comparison of her answers shows that they were copied from others, as she testified, and in Exhibits Nos. 43 to 47 is found a corroboration of the fact that she was admitted to examination without being qualified therefor.

Appellant Ramírez also contends that the testimony of Manuel Colón Bonilla cannot be relied on to convict him, because he was an employee of the Government which suborned him and the instigator of the conspiracy charged in the information, and that it was a concocted conspiracy and a simulated offense inasmuch as it could not have been committed without the participation of Colón Bonilla.

We have seen that without the participation of Colón Bonilla it was proved that appellant Ramírez furnished the answers to Juana Albandoz, but in any event the testimony of said witness is admissible to determine the existence of the conspiracy charged. It is no defense that an agent of the Government feigned to lend his assent and furnished the means for the commission of a crime when it is not sought to prove said crime but to show that there existed a general plan for the commission of criminal acts, and the case of *State* v. *Dougherty et al.*, 96 Atl. Reporter, 57, cited by the appellant in his brief, is not applicable to this case, because it involved a conspiracy of the municipal councilmen of Atlantic City with one Harris, a Government employee, for the adoption of an ordinance for pay in which Harris was a

necessary party and the promotor, so that the conspiracy could not have been committed without him, differing from the present case in which Clemente Ramírez was not invited by Colón Bonilla to enter into a general conspiracy inasmuch as there was proof of other acts committed by Ramírez, and the act of the Government agent was only one of the links in the chain of evidence to show the criminal connection of Ramírez with the said conspiracy. Colón Bonilla, who was employed by the Government to ascertain whether it was true that diplomas as pharmacists were being sold, did not invent a crime which was not in the minds of defendants and which they were not committing, but, pretending that he was a candidate for a diploma in pharmacy without the required qualification therefor, he agreed to the proposal of Juliá that he should pay him money and arrange with Ramírez for furnishing him the answers to the questions to be included in the examination.

Although appellant Ramírez contends that there was no evidence of the alleged conspiracy to approve the examinations of candidates not qualified for diplomas as pharmacists, the contrary appears from the evidence in this case, not only because the furnishing of the answers in the subjects embraced in the course of pharmacy clearly shows that they intended to place applicants who acceded to their demands for money in a position to appear before the examining board as qualified to receive such diploma, but also they stated expressly to some of the candidates that they would aid them to that end.

There is no variance between the information and the evidence, as claimed, for, although it was shown that the appellants made different demands for money for approving the examinations of the candidates and admitting them to examination without their having the qualifications therefor, this was the manner of proving the acts tending to the commission of the offense charged in the information. The particular motive of the conspiracy was not important, for any

other motive besides that of obtaining money might have been shown, provided it were proved that there was some motive for which the defendants conspired to perform acts injurious to the public health and contrary to the due administration of the law.

As regards the assignment of error under consideration, Ramírez finally contends that the testimony of Colón Bonilla was not corroborated, but the evidence shows the contrary, for such corroboration is to be found in the admission by Ramírez himself that Colón Bonilla presented to him the letter of recommendation which the witness said Monclova gave him for Ramírez. Colón Bonilla testified that he did not know Llauger Díaz or Ramos Casellas and that he did not take an examination under the former or practice in the drugstore of the latter, and the said persons corroborated this fact and testified that they furnished the certificates to the contrary accompanying the application for examination made by Colón Bonilla because appellant Juliá asked for them. Exhibit 13 also corroborates his testimony that he did not possess the required qualifications to be admitted to examination, because it is signed without the required answers to the questions on this point. Colón Bonilla testified that Ramírez furnished him the answers to the examination questions so that he might copy them and, in fact, detective Lewis had them in his possession and Spear made photopraphic copies thereof.

The last error assigned is that the court erroneously admitted evidence detrimental to appellant Ramirez over his objection.

In this regard it is claimed that the testimony of Carlos Buitrago should not have been admitted to corroborate that of Colón Bonilla because it was hearsay evidence concerning acts and statements of the latter, who was not a defendant, had not testified at the time and was also an accomplice, and concerning acts and statements of another witness called

Ajenjo, who also did not appear as a defendant and had not testified at the time.

The judge has discretional power as to the order in which the evidence may be introduced and we do not see that the appellants were prejudiced by the admission of Buitrago's testimony before Colón Bonilla and Ajenjo had testified. In fact, it was properly introduced first, inasmuch as it went to show how the discovery of the conspiracy had begun. Even admitting that Colón Bonilla was an accomplice, Buitrago was not, for he accepted no bribe and was merely the one who put Colón Bonilla in touch with Ajenjo so that the latter might arrange with appellant Calderón Aponte. In his brief Ramírez fails to particularize why the testimony of Buitrago was hearsay, and it would rather seem that he bases his objection on the ground that an instrument was admitted in evidence, for he calls attention to pages 150 and 151 of the transcript of the record where it appears that there was offered and admitted in evidence an instrument executed by Colón Bonilla before Buitrago as notary, which instrument was not protocoled nor signed by witnesses and contained certain entries from a book with answers which Colón Bonilla exhibited to the notary for that purpose, said objection being based on the ground that it was secondary and hearsay evidence and that the defendants had taken no part therein.

The admission of the said instrument prejudiced no one, for the facts therein stated were also testified to by the witnesses and as to the alleged hearsay evidence, the court not only said in admitting it that it would be given the value which it might have in law but, as we have held formerly, "In cases tried by a court of law without a jury the admission of impertinent evidence for consideration by the judge together with all the other evidence is not an error which warrants the reversal of the judgment, because, when deciding the case the court will weigh together all the elements of the evidence, giving to each the weight that it deserves." *The People* v. *Vélez,* 17 P. R. R. 977.

The testimony of Aureliano Ortiz was also admissible because it corroborated the testimony of Bonilla that he presented to Juliá a letter from Monclova.

López Molina's testimony showed not only an agreement with Calderón Aponte to admit him to examination for a monetary consideration, but also, as we have already said, connected Calderón with Juliá, who, being in charge of the enrollment, admitted him although disqualified therefor; therefore, there was no error in admitting this testimony.

As to the introduction of the letter written by Ajenjo to Buitrago, we do not see that the objection was clearly made in the lower court on the ground that it was hearsay evidence.

We have already said that there was no variance between the information and the evidence and therefore the lower court did not err in admitting evidence regarding the demand for money made by the appellants to approve as pharmacists candidates not entitled to diplomas either because they had not graduated in the preliminary studies required by law or lacked knowledge of the subjects included in that profession, because it was sought to prove by the evidence the conspiracy charged in the information, which put the defendants on notice to produce evidence regarding the acts charged.

The greater part of the objections made by Ramírez at the trial is based on the mistaken theory that the district attorney was attempting to prove individual bribery, whereas the object of the evidence was to prove the plan of the conspiracy of the defendants.

Other assignments of error by the appellant as to the admission of evidence are related to matters already discussed and it is not necessary to consider them anew.

In conclusion we will say that the attorney for appellant Calderón Aponte stated at the hearing before this court that according to the new Organic Law of this Island, approved by the Congress of the United States and by the President

on March 2, last, known as the Jones Act, the defendants had a right to be tried by a jury. We need not consider that question as the trial took place before the passage of that Act.

We feel that we should not terminate this opinion without stating that the acts committed by the appellants, who had been charged by the community, through the Governor, with safeguarding its public health by the enforcement of the statutes for the issuance of diplomas in pharmacy, are acts of such a repugnant and criminal nature that the trial judge was justified in imposing the maximum penalty prescribed for the crime by the Penal Code.

The judgment appealed from should be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Hutchison concurred.

On July 3, 1917, a motion for reconsideration by Clemente Ramírez de Arellano was overruled and a petition for a writ of error by José Calderón Aponte was denied.